GROVES BROS. & COMPANY, a Missouri
Corporation, Plaintiff-Respondent,

v.

Elyzabeth H. SCHELL, Defendant-Appellant.

No. 23928.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Robert E. Coleberd, Hale, Coleberd, Kincaid & Waters, Liberty, for appellant.

Loomis & Lacy, Kansas City, for respondent.

SPERRY, Commissioner.

This suit was instituted by plaintiff, a Missouri Corporation engaged in the real estate business, against Fred and Elyzabeth Schell, husband and wife, defendants, to recover the reasonable value of services rendered to them in procuring a 99 year lease on their property for a rental of $3,600.00 per year. Upon motion, the cause was dismissed as to Fred P. Schell, and the jury returned a verdict of $4,000.00 in favor of plaintiff and against Elyzabeth H. Schell, known herein as defendant. From a judgment thereon, defendant appeals.

It is alleged in the petition that the Schells are the owners of certain parcels of land located at the southeast corner of 14th and Cherry Streets, Kansas City, Missouri; that at their instance, and on their behalf, plaintiffs procured for them a 99 year lease on said property, for a consideration of $3,600.00 per year; that they have accepted the lease and are enjoying its benefits; that the reasonable value of the services rendered is the sum of $4,053.92; that demand for payment thereof has been made and that payment has been refused.

The Schells admitted ownership of the property and the identity of the plaintiffs, but denied all other allegations of the petition.

Mr. Wells, an employee of plaintiff, stated that Mr. Huttig, Mrs. Schell's brother, came to plaintiff's office and talked with him about the property; that they had many conversations about this property; that Wells contacted various owners of property in that area; that this was in 1961; that Mr. Dehner contacted witness with a view to assembling various parcels of real estate at this location for the construction of a building; that witness contacted Mr. Lillis who represented owners of other property in the vicinity; that he talked to Mrs. Schell in the office of her attorney, Mr. Hale, at Liberty, December 4, 1961; that plaintiff then had two parties interested in the property; that Mr. Hale, Mrs. Schell, Mr. Huttig, and Mr. Groves, president of plaintiff, all participated in the conversation; that he asked Mrs. Schell for an exclusive contract for the sale of the property; that she refused to sell but stated that she would lease it; that he then asked her for an exclusive contract for leasing; that Mr. Hale advised against execution of such an exclusive contract *until* the highway department should make an offer of damages for the taking of a portion of the land as right of way; that he then asked for a letter showing that plaintiff had authority to lease the land for defendant; that a letter, signed by Mr. Hale and Mrs. Schell, dated January 24, 1962, was received. In the letter it was stated that if defendant, within 60 days thereafter, should desire to make a long term lease on the property and should receive an acceptable offer thereon, plaintiff would be notified thereof and if, within 30 days thereafter, plaintiff's customer should meet the terms, a contract thereon would be entered into; that, thereafter, he talked to defendant by telephone and a conference between her, witness, and Mr. Lillis was held in the office of Mr. Hale, where it was agreed that she would lease at 6% return on a valuation fixed by an appraiser to be agreed on; that, eventually, a lease to Mr. Lillis for 99 years was agreed on, at a rental of $120.00 per month during the first 18 months, and at $300.00

per month thereafter; that it was agreed that Mr. Lillis should raze the buildings on the property and level the land; that he was to post a $2,000.00 bond to protect defendant in this operation; that defendant authorized Wells to supervise that operation for her; that, later, Mr. Groves drew the lease contract and it was executed by the parties; that witness was authorized by defendant to collect from Lillis and to remit to her, certain rentals and tax moneys, which was done; that, in one telephone conversation with defendant, before the lease was executed, witness told her that it had been a difficult job to get the deal through, and that she said: "well you'll get a commission out of it", and that witness said: "that's right."

Mr. Lillis, who is in the real estate and insurance business, stated that he entered into a 99 year lease on the property owned by Mr. and Mrs. Schell on the terms mentioned herein; that he first learned from Mr. Wells that the property was available for lease; that he discussed the terms and conditions of the lease with Mrs. Schell; that Mr. Hale and Mr. Wells were present; that it was then agreed that he should take possession of the property when the lease should be executed; that, later, it was agreed that he should take possession 15 days prior to the date of the lease. He identified a letter, dated August 21, 1962, from Mr. Hale to him authorizing him to take possession upon payment of certain rental and tax money, totalling $311.32, to be paid to Mr. Wells for defendants. The letter was signed "Francis G. Hale and Elyzabeth H. Schell".

Mr. Groves, president of plaintiff corporation, and a lawyer, stated that he had long been acquainted with the Schells; that he participated in a conference, in Mr. Hale's office, December 4, 1961; that those present were Mrs. Schell, Mr. Huttig, Mr. Wells, and Mr. Hale; that Mr. Huttig, Mrs. Schell and Mr. Hale all participated in the conversation; that the subject of the conference was the sale or leasing of the Schell property; that plaintiff requested an exclusive contract for the sale or lease of the property; that Mr. Hale advised against execution of such a contract *until* they had finished their transaction with the highway department; that no objection was made to the giving of an exclusive contract to plaintiff to deal on the property; that plaintiff continued to work on the deal until the lease was executed in November of 1962; that the lease was drawn by the witness; that he spent 15 days working on it; that the drafting of such a lease is a complicated and difficult undertaking; that, from experience and knowledge gained in the real estate field, plaintiff's services, in bringing about the final execution of the lease, is reasonably worth $4,000.00.

There was other testimony to the effect that the services rendered by plaintiff were of the reasonable value of $4,000.00.

■ Defendant contends that no submissible case was pleaded or proved. In view of the jury verdict we will accept as true all the facts in evidence that tend to support the verdict for plaintiff and reject all facts contrary thereto; we will draw from the facts all reasonable inferences favorable to and in support of plaintiff's right to recover. Steele v. Woods, Mo. App., 327 S.W.2d 187, 191.

■ Plaintiff's petition states a good cause of action in *quantum meruit*, Sprague v. Sea, 152 Mo. 327, 332, 53 S.W. 1074; Crain v. Miles, 154 Mo.App. 338, 344–345, 134 S.W. 52; Lewis v. Thompson, 231 Mo. App. 321, 96 S.W.2d 938–942. Those decisions are authority for the proposition that where one acts as a mere volunteer, he is not entitled to compensation for his services; but where one performs services for another at his instance and request, *or where an act done is beneficial the subsequent assent of the beneficiary will be sufficient evidence from which the jury will be authorized to find that such act was*

*done upon defendant's request;* and such proof makes a *prima facie* case.

█ The evidence was that Mrs. Schell's brother, Mr. Huttig, first contacted Mr. Wells regarding this property; that Mr. Huttig officed in the Schell real estate office; that he and Mr. Wells discussed the matter frequently; that he was present at the conference in Mr. Hale's office where the matter of leasing the property was discussed; and that both Mr. Huttig and Mrs. Schell participated in the conversation, as did Mr. Hale, defendant's attorney. Plaintiff asked for and received a letter, signed by Mr. Hale as attorney for Mrs. Schell, authorizing plaintiff, subject to stated conditions, to produce a lessee. Mr. Hale advised defendant not to give plaintiff an exclusive contract to lease the property until negotiations with the highway department were completed. It is significant that neither Mr. Hale nor Mrs. Schell voiced any objection to the giving of an exclusive contract, but that, upon advice of counsel, defendant merely refused to give it pending highway negotiations. The Schells are in the real estate business and maintain an office in that connection. Mr. Huttig officed there and carried a document from defendant to Mr. Wells in connection with this transaction. Mrs. Schell authorized Mr. Wells to generally supervise for her the razing and levelling of the land here involved. She also authorized him to collect certain money due her from the lessee, and to remit same to her, which he did. She executed the lease, procured for her by plaintiff, after more than a year of effort upon the part of Mr. Groves and Mr. Wells. She accepted the work product of Mr. Groves in drafting the lease. In short, she accepted and retains the benefits of plaintiff's services. "[T]he circumstances surrounding the transaction do not show the services were to be gratuitous". Crain v. Miles, supra. To the contrary, the jury could have inferred that there was an implied contract between defendant and plaintiff for plaintiff's services in procuring a lessee, and for the payment to plaintiff of the reasonable value of such services. Lewis v. Thompson, supra, 98 S.W.2d 943.

There is no evidence tending to indicate that defendant believed plaintiff was employed by Mr. Lillis, a suggestion appearing in this case for the first time in defendant's brief. No such suggestion appears in the answer, and no evidence thereof was before the jury in the trial court. Even if it could be said that there was evidence from which the jury *could* have drawn such an inference, the jury did not do so. There was ample evidence from which it could have drawn the inference that defendant had orally contracted with plaintiff for the services which it rendered, and the jury found such to be the fact. Mabes & Co. v. Fishman, Mo.App., 284 S.W.2d 21, 26–27; Arthur L. Kniffen Real Estate Co. v. Accardi, Mo.App., 365 S.W.2d 84–87; Davis v. Geiger, Mo.App., 212 S.W. 384, 386, (P. 1).

█ Defendant charges that plaintiff's verdict directing instruction No. 1, is erroneous for the reason that it required the jury to find that there was an oral contract of employment between defendant Elyzabeth Schell and plaintiff, which finding is not pleaded nor supported by evidence. The criticism is unjustified.

██ It is next urged that the instruction does not contain the hypothesization to be found by the jury which is necessary. A verdict directing instruction must hypothesize all of the elements of plaintiff's case essential for him to recover. Steele v. Woods, supra, 327 S.W.2d 200. The instruction requires that the jury find the employment of plaintiff by defendant to lease the property, that plaintiff first solicited Mr. Lillis as a lessee and brought his name to defendant as a prospective lessee and that Mr. Lillis did lease the property from defendant. Those are the essential facts required to be found in this case.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.