Frieda Meier, appellant, v. Blair A. Phillips et al., as trustees
of estate of W. C. Putnam, and G. R. Kinney Co.,
an Iowa corporation, appellees.

No. 51320.

(Reported in 129 N.W.2d 92)

JUNE 9, 1964.

Newport, Wine & Schebler, of Davenport, for appellant.

Elliott R. McDonald of McDonald, McDonald & Carlin, of Davenport, for appellees.

THORNTON, J.—Plaintiff's action is to recover for personal injuries suffered in a fall on defendants' sidewalk. The sidewalk is on defendants' property, it is between the building line of defendants' building and the city sidewalk along the north side of West Second Street between Brady and Main Streets in Davenport. The fall occurred in front of the Kinney Shoe Store, one of defendants' tenants. The entire sidewalk is equipped with heating units to clear snow and ice from the walk, installed and operated by defendants.

After a jury verdict of $2500 for plaintiff, the trial court sustained defendants' motion for judgment notwithstanding the verdict, because of the insufficiency of the evidence to show defendants' negligence in failing to exercise reasonable care to maintain the premises, or defendants knew or should have known of the dangerous condition. Plaintiff appeals.

In the pleadings defendants admit the ownership of the sidewalk, plaintiff was an invitee and their responsibility for the operation of the heating units.

In argument here plaintiff concedes there is no evidence in the record to show that the defendants either created or actually knew of the existence of a dangerous condition on their property prior to the time of the accident. She bases her case on circumstantial evidence the dangerous condition existed for such a length of time that defendants in the exercise of reasonable

care should have known of it and removed the condition or warned of the danger.

The parties agree on the applicable law, that defendants as the occupiers of land are liable to plaintiff for injuries occasioned by unsafe conditions if defendants know or by the exercise of reasonable care should discover the condition which, if known to defendants, they should realize as involving an unreasonable risk to plaintiff and have no reason to believe that plaintiff will discover or realize the risk involved. Restatement, Torts, Volume 2, section 343; Bartels v. Cair-Dem, Incorporated, 255 Iowa 834, 843, 124 N.W.2d 514, 519, and citations; Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252; Corkery v. Greenberg, 253 Iowa 846, 849, 114 N.W.2d 327; and Schafer v. Hotel Martin Co., 249 Iowa 866, 869, 89 N.W.2d 373.

It is not contended the ice or snow or both on a sidewalk to which the public was invited was not dangerous. See Christianson v. Kramer, 255 Iowa 239, 122 N.W.2d 283, 288. The parties address their arguments to the question of defendants' notice or knowledge of the condition based on circumstantial evidence. Defendants do not seek to save the judgment on other grounds in their motion for judgment notwithstanding the verdict.

In considering the question presented, plaintiff has the burden of proof, she is entitled to the most favorable construction of her evidence as it will reasonably bear, questions of negligence are generally for the jury, where facts are not in dispute, if reasonable minds might draw different inferences from them, a jury question is engendered, and an issue may be proven by circumstantial evidence, but this evidence must be such as to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it is for the jury to say whether circumstantial evidence meets this test. The foregoing, for which citation of authority is not necessary, rule 344(f), 2, 8, 10, 16 and 17, Rules of Civil Procedure, are here applicable, Bartels v. Cair-Dem, Incorporated, 255 Iowa 834, 837, 124 N.W. 2d 514, 516. When two or more theories are reasonably probable the question of which is more probable is for the jury to decide. Delay v. Kudart, 256 Iowa 523, 128 N.W.2d 201. It is not neces-

sary to negative every other possibility. Cable v. Fullerton Lumber Co., 242 Iowa 1076, 1082, 49 N.W.2d 530.

■ Plaintiff's case is based on her testimony, that of a city policeman and an assistant manager of the Kinney Shoe Store.

Plaintiff testified she is a lady 77 years old, regularly employed at the time of the fall. On January 9, 1962, at about 4 p.m. she was walking east alongside of defendants' building on West Second Street when she fell. She testified she was walking in her ordinary way, that when she got as far as Kinneys, "* * * down I went. My feet went just like that. * * * I * * * couldn't get up because the sidewalk was slippery * * * there was no warning * * * of the slippery condition of the sidewalk * * *." Plaintiff had not been along the sidewalk earlier that day and did not have any reason to know it was slippery. On cross-examination plaintiff testified:

"Q. * * * Was there snow on it? A. There must have been, otherwise, I wouldn't have slipped.

"Q. Did you see snow or ice or water or something on the sidewalk? A. Well, it was damp. * * *

"Q. It was below zero at the time you fell? A. Yes.

"Q. You think the sidewalk was damp? A. Well, it wasn't dry."

Plaintiff further testified, "I did not see any snow on the sidewalk and I did not see any ice on the sidewalk but I slipped, that's all I know, my feet went out from under me. * * * There must have been something on it. That's all I know. You don't fall from nothing. It must have been ice or snow. I don't know."

The policeman testified, "We found the sidewalk in a very slippery condition, and it had a thin layer of snow or slush or something like that. It just had a thin layer on it. The rest of the sidewalk in the block was free and clear of ice and snow. * * * I believe it was snow and slush that made the sidewalk slippery * * *. I don't believe there was any ice at all. * * * It was uneven from the ridges and the slush. * * * Every place that nobody walked in it, it had a smooth surface. * * * I couldn't say how deep this snow and slush was. I would say it was between a half inch and an inch. By slush I mean wet snow. It doesn't strike me as being rather peculiar to have wet snow

in zero weather when the sidewalk heaters were not on. The temperature was around zero. The slush is the type that when you stepped in it you went to the bottom—sunk into it. The entire sidewalk in front of Kinney Shoe Store was covered with this one-half inch to one inch of snow and slush, and at no other place on the block was there any such similar condition. I would say the sidewalk every place else in the block was clear from all snow, ice and slush and everything."

The assistant manager testified it was a real cold day, that he observed the ice patches about 20 minutes after plaintiff's fall, there was one ice patch in front of the store about six feet out from the store and another out by the curb and he put salt on them, "* * * we expected the snow and ice to be removed from the heated sidewalk." On cross-examination he testified:

"The first patch of ice * * *, the one up close to the building * * *. It was only about a foot and a half in diameter. * * * There was another patch of ice down towards the curb. That was more broken up and more slushy than it was ice towards the curb. * * *

"Q. Now what was this slippery substance? Was it snow? Was it ice? Was it water? A. It was ice. * * *

"Q. Was it smooth or was it rough? A. Kind of rough.

"The other patch of ice like I said wasn't like that. It was a lot softer—slushy. Toward the curb, like where maybe cars had splashed it up on the curb. * * * I haven't any explanation as to how the other piece of ice near the building got there. It wasn't anything I did, that caused it to be there. I have no reason to use any kind of water on the sidewalk. It would be possible that window washers were washing windows. If I am right, I think they do it three times a week. It is possible that day but they are there at five o'clock in the morning so I couldn't tell you. If they put any water on the sidewalk it would be close to the building, yes."

Defendants' building engineer testified for them that he observed the sidewalk in the morning when he came to work and again around 10 a.m. He testified both that he didn't see any ice or snow at any place and positively there were no accumulations of ice, snow, sleet or slush on the sidewalk in front

of Kinney Shoe Store. He also testified to the use of the sidewalk heaters. On cross-examination when asked concerning his observations he said, "I always walk up far enough to see. I wouldn't have to walk clear up to Parkers. I could walk up halfway and have a pretty good idea of what the walk would look like. I can see a few feet. There was no snow. Why would I be looking for snow that morning?" and "Q. What were you looking for? A. Ducks."

In explaining the use of the sidewalk heaters the engineer testified a rough log was kept. There had been a six-inch snow January 6. That day the heaters were on from 2:30 a.m. until 5:30 a.m. On January 7 they were on from 9:15 to 11:45. That was the last time the heaters were on prior to January 12. There was evidence it did not snow between January 6 and the time of plaintiff's fall on January 9.

Plaintiff's evidence presents two versions of the condition of the sidewalk. The policeman and assistant manager sound like they are talking about two different sidewalks or the same walk on different days. Plaintiff's own testimony does not help in this regard, it could be consistent with either the policeman's or assistant manager's. However, plaintiff is not bound by either, State v. Hobbs, 252 Iowa 432, 439, 107 N.W.2d 238, and Thorn & Stein v. Moore, 21 Iowa 285, 290, but the descriptions of the walk are so inconsistent both could hardly be true.

Plaintiff's theory is the slippery condition of the walk is the residue of the January 6 snow three days before. The other theories are, slush splashed up from the curb, the window washers and any other source. Defendants' theory is, any other source. They contend plaintiff said the walk was damp, the policeman said it was slushy, and the assistant manager, examining the walk 20 minutes after the fall, said it was ice, the temperature was zero all day, the sidewalk heaters were not on, no salt had been put on the walk, any water or slush would freeze within a few minutes. Yet it was not frozen when plaintiff fell, nor when the policeman observed the walk, but was when the assistant manager examined it. And this alone shows the condition had only been on the walk a few minutes.

Though this is certainly a theory of the evidence the jury could have accepted, it completely disregards the fact the policeman testified the entire sidewalk in front of Kinney Shoe Store was covered with one-half inch to one inch of snow and slush while the assistant manager testified to two icy spots, one six feet from the building a foot and half in diameter and another near the curb. If defendants' theory is to be accepted some further explanation is necessary. It also disregards the assistant manager's testimony of slush near the curb. And it should be pointed out the testimony concerning the sidewalk heaters or their efficiency need not be taken as a verity. Likewise the engineer's testimony relative to his inspection of the walk might be disbelieved or a proper inference drawn that it showed a negligent inspection.

If the policeman's version of the condition of the walk is believed, it follows the theory the condition of the walk when plaintiff fell on January 9 was the residue of the January 6 snowfall is reasonably probable. And more probable than any other theory. This is certainly true if the use and efficiency of the sidewalk heaters was other than as testified. The jury could properly find the slush and snow on the walk when plaintiff fell was from the January 6 snowfall and defendants had taken no steps or ineffectual steps to remove it. The jury could properly find defendants knew or should have known of the snow in three days' time as well as it involved unreasonable risk to invitees using this street in the business district of Davenport. Certainly we cannot say as a matter of law defendants were free from negligence when it may be properly found defendants allowed the dangerous condition to remain on the sidewalk for a period of three days.

It follows the case must be reversed and remanded with instructions to reinstate the verdict.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting.