DORIS C. POUND, appellant, v. RAYMOND C. BROWN et al., appellees.

No. 51925.

(Reported in 140 N.W.2d 183)

February 8, 1966.

Rehearing Denied April 5, 1966.

Pollard, Deitchler, Thomas & Lawse, of Fort Madison, for appellant.

Boyd, Walker & Concannon and McManus & McManus, all of Keokuk, for appellees.

Becker, J.—Plaintiff's action for real-estate broker's commission was tried to a jury resulting in a verdict for plaintiff. From judgment notwithstanding the verdict, plaintiff appeals.

Where motion for judgment notwithstanding the verdict has been sustained, the rule, like that involving directed verdicts, is that plaintiff is entitled to the most favorable construction her evidence will reasonably bear. Rules of Civil Procedure, 344 (f)2; Meier v. Phillips, 256 Iowa 757, 759, 129 N.W.2d 92, 94. There is no substantial factual dispute.

Plaintiff is a resident licensed real-estate broker in Kirksville, Missouri. Defendants Raymond C. Brown and Dorothy M.

Brown are residents of Keokuk, Iowa. They contacted plaintiff's office in Kirksville to buy a trailer court. At the time plaintiff employed seven real-estate salesmen including her husband, with whom the Browns initially did business.

Mr. Pound learned defendant Mr. Dimond, an Illinois resident, had a trailer court for sale in Keokuk, Iowa. The Browns had a farm they wanted to sell. Mr. Pound brought defendants together at a meeting at the trailer court on June 25, 1962. They tentatively agreed that Dimond would pay the Browns $45,000 for the farm and Browns would pay Dimond $100,000 for the trailer court. Other conditions and terms were to be worked out. There was discussion of the real-estate commissions. Mr. Pound proposed that commissions be set at 3¾ percent up to equal value and 5 percent above; i.e., the Browns to pay 3¾ percent on $45,000 and Dimond to pay 3¾ percent on $45,000 plus 5 percent on $55,000. Nothing was signed at that time.

Mr. Dimond's ex-wife was part owner of the trailer court in Keokuk. Mr. Pound contacted her and was referred to her attorney, William Hollingsworth. The transactions as to Mrs. Dimond were carried on through Mr. Hollingsworth. A 2½ percent commission on her part of the transaction was agreed to and eventually paid. Mr. Hollingsworth prepared a real-estate contract which was never used. These matters were the subject of a number of trips in June and July.

Plaintiff, Mrs. Pound, testified that she first met the defendants July 19, 1962, at the Triangular Trailer Court in Keokuk, Iowa. The purpose of the meeting was to try to work out details of the sales contract for the sale of the trailer court to Browns and acceptance of Browns' farm as down payment. Mrs. Pound had prepared an offer and acceptance which was not signed by any of the parties, but the Browns and Mr. Dimond agreed with plaintiff to the commission arrangement heretofore related. Subsequently Mrs. Pound obtained a contract prepared by attorney Hollingsworth. This contract was signed by Dimond and his ex-wife, but not by the Browns. On September 8, 1962, Mrs. Pound went to Keokuk but did not see any of the defendants. On September 17, 1962, she met with the Browns and Dimond at the trailer court in Keokuk at which time she asked

Mr. Dimond about drawing a contract for sale. She was told by Mr. Dimond that arrangements had already been made for completing the transaction, that they had decided to cut the price *and the commissions* because the plaintiff had not done any work in drawing the contracts. The prices were cut by $10,000 on each side; i.e., Dimond sold the trailer court to the Browns for $90,000 and purchased the Browns' property for $35,000. Thus the commissions were cut proportionately.

The written contract completing the sale was dated September 26, 1962.

Plaintiff, Mrs. Pound, sued the Browns for $1312.50 in commission and sued Mr. Dimond for $4062.50. The verdict was for the amount claimed with interest. Plaintiff filed a remittitur of $825. Apparently this amount was filed due to payment already received from Mrs. Dimond.

I. The first issue to be considered is defendants' position that plaintiff failed to allege or prove a cause of action. This position should be analyzed independent of the impact of the real-estate brokers and salesmen statutes found in chapter 117, Code, 1962.

Plaintiff's petition alleges throughout that the claimed contract was with plaintiff and the claimed services were rendered by plaintiff. By way of amendment to conform to the proof she alleges that Mr. Pound was at all times material to the action acting as her agent. This amendment was resisted by defendants. There was no ruling. Allowance of such amendments is the rule, denial thereof is the exception. Mundy v. Olds, 254 Iowa 1095, 120 N.W.2d 469.

Although plaintiff's evidence clearly shows that the initial work was performed by Mr. Pound, there is also substantial evidence upon which the jury could find that Mrs. Pound was personally active in the transaction, met with all of the parties several times, and agreed with the defendants as to the commission rates.

The jury was instructed that in order for plaintiff to recover she would have to establish that the alleged agreement was made with her individually, and that the negotiations and services for which she seeks compensation were performed by her

personally. The instruction further stated that if the agreement was with plaintiff's husband and the negotiations and services performed by him, plaintiff could not recover.

Plaintiff objected to this instruction. Since the verdict was for plaintiff, we do not here determine the propriety of the instruction. We do hold that there was substantial evidence in the record to justify the jury's verdict on this issue.

II. If both plaintiff and her husband were licensed in Iowa, as real-estate broker and salesman respectively, there would be little question concerning plaintiff's right to recover. Such is not the case. Thus the real issues are raised.

Mr. Pound, licensed as a real-estate salesman in Missouri, has never been licensed as such in Iowa. Plaintiff, Mrs. Pound, licensed as a real-estate broker in Missouri, was not licensed as a real-estate broker in Iowa until September 13, 1962.

"Section 117.1 License mandatory. No person shall act as a real-estate broker or real-estate salesman without first obtaining a license as provided in this chapter. * * *." Code, 1962.

Section 117.43 provides a fine or imprisonment for violation of any provision of chapter 117.

"Under statutes providing that brokers and the like shall procure a license, and that any person who acts as such without having procured a license, shall be fined on conviction, it has been held that the imposition of a penalty prohibits the act and makes it unlawful, so that contracts cannot be enforced." 12 Am. Jur.2d, Brokers, section 178, page 918. This appears to be the general rule. See 12 C. J. S., Brokers, section 67, page 155.

We have previously construed chapter 117, Code, 1962, as regulatory. Noll v. Mastrup, 233 Iowa 1176, 11 N.W.2d 367.

█ We have followed the foregoing rule in Iowa in an early case where the regulatory law was a city ordinance. Richardson v. Brix (1895), 94 Iowa 626, 63 N.W. 325. The rationale of the rule is that the contract of an unlicensed broker for services being prohibited is void and unenforceable. See annotation 169 A. L. R. 767, 769. The cases there collected are by no means uniform in their results nor are they uniform in statutes considered. Our statutes must be construed as adopted by Iowa

legislature. Chapter 117 contains additional sections including section 117.30.

██ Code, 1962, section 117.30, reads: "Actions—license as prerequisite. No person, copartnership, association, or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or salesman *without alleging and proving that such person*, copartnership, association, or corporation *was a duly licensed real estate broker or real estate salesman at the time* the alleged cause of action arose." (Emphasis supplied.)

The ordinance considered in Richardson v. Brix, supra, contained no such provision. This court considered section 117.30 in Ducummon v. Johnson, 242 Iowa 488, 47 N.W.2d 231, but that case turned on plaintiff's failure to prove the requisite allegations demanded by the section. The court held that the testimony of plaintiff was proof that he had an Iowa broker's license at all material times, the objection that this was not the best evidence was not properly raised. Defendant cites Ducummon for the proposition that a real-estate broker must be licensed at the essential and material times when a real-estate broker performs his services. The decision there went to what was proved, not to what plaintiff was required to prove. It was not necessary that the court there decide at what time a broker's license was necessary under section 117.30. The problem that we have here was not before the court.

Indeed, a holding that a broker's license is necessary at the time of listing and of the sale would change the last eight words of the section. This we cannot do.

Similarly, a holding that plaintiff cannot here recover because her contract was void and unenforceable would be directly contrary to the plain meaning of section 117.30. If the contract is void, it is void *ab initio*. Such a ruling would give section 117.30 nothing upon which it could act.

The California courts have had occasion to examine their statute which is of identical import. The court there said: "Manifestly the legislature herein undertook to prescribe an

essential condition of recovery but limited its operation to the time when the cause of action arose. By implication any earlier period was excluded. It is a reasonable construction of the act to hold that it is unlawful for anyone to engage in the business of a real-estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such license at the time his cause of action arose, although his contract may have been executed prior to that time when he had no license. Herein, manifestly, the cause of action arose when plaintiff obtained a purchaser for the property, and it is not disputed that then he had the proper license, and it was so alleged in the complaint." Houston v. Williams, 53 Cal. App. 267, 271, 200 P. 55, 56. See also Davis v. Chipman, Cal. App., 282 P. 992, 994; Wise v. Radis, 74 Cal. App. 765, 242 P. 90.

New York reached an opposite conclusion in Bendell v. De Dominicis, 251 N. Y. 305, 167 N.E. 452, in construing an almost identical provision. The New York statute also contains the "at the time the alleged cause of action arose" provision. Despite such provision, the court held collection of compensation would be denied because the contract was illegal and thus unenforceable. As heretofore indicated we cannot follow this reasoning where the statute recognizes the validity of the contract by allowing recovery under the stated condition. It is our duty to so interpret the statute the way it is written. Plaintiff therefore need only show that she had received her broker's license "at the time the alleged cause of action arose". Under our statute failure to have a real-estate broker's license prior thereto is immaterial.

III. It becomes pertinent to determine when the cause of action arose. We must keep in mind the alleged contract was oral. The testimony of Mrs. Pound includes the statement that both Mr. Dimond and the Browns agreed to the commissions and that the commissions would be payable only if the sale was consummated and a contract of sale executed by the parties. The consummation of the sale depended upon the financing available and the acceptance of the farm as down payment on the trailer park. This evidence clearly supports a finding by the jury that the commissions would neither be earned nor payable until the sale was consummated and a contract of sale executed by the

parties. If plaintiff's testimony is believed, the commissions would be earned when the contract was executed and complete, not before. The jury had a right to so find.

The evidence is also that as of September 17, 1962, the date of plaintiff's last discussion with defendants, the final contract had not been signed. By stipulation it appears that the contract for sale of realty was actually entered into by the defendants on September 26, 1962, some 13 days after plaintiff received her license.

Instruction No. 9 reads in part as follows: "The plaintiff bases her right to a commission in this case on a consummated sale of the properties between the defendants. * * * Before she can maintain this action she must prove that on the date the defendants completed the transfer of the properties between themselves she held a broker's license in the State of Iowa." The jury could and did find for plaintiff under this instruction. Defendants' objection to the instruction was not sound by reason of what has been said in Division II.

■ IV. We now consider the fact that Mr. Pound acted without a license. Plaintiff argues that chapter 117 does not prohibit a real-estate broker from maintaining an action where an unlicensed salesman performed part of the services. She urges that if the legislature had intended to prohibit the licensed broker from suing his contractee where such broker employed an unlicensed real-estate salesman, it could have and should have said so.

It is true that chapter 117 does not expressly prohibit a real-estate broker from hiring an unlicensed salesman. Section 117.2 provides that a broker's license shall not be granted to a copartnership, association or corporation unless every one of its members and associates are licensed as real-estate salesmen. The individual proprietorship has been omitted.

The prohibitions in section 117.30 are in the disjunctive. A real-estate *salesman* is prohibited from maintaining actions for compensation for services performed as a real-estate salesman unless he was duly licensed as a real-estate salesman at the time the cause of action arose. A real-estate *broker* is prohibited from maintaining actions for compensation as a real-estate broker un-

less he alleges and proves that he was duly licensed as a real-estate broker at the time the cause of action arose. It does not follow that a real-estate broker is prohibited from maintaining an action unless he alleges and proves that both his real-estate salesman and he, as real-estate broker, were licensed when the alleged cause of action arose. For such construction additional words must be read into the statute.

Section 4.2 "Common law rule of construction. The rule of common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." Code, 1962.

■ However, this section does not authorize us to enlarge the plain provisions of the law, Bergeson v. Pesch, 254 Iowa 223, 117 N.W.2d 431.

Defendant contends that the conclusion here reached would defeat the purpose of chapter 117, and particularly of section 117.30. We cannot agree. The chapter contains numerous enforcement and regulatory provisions including the creation of a commissioner with power to grant and to revoke licenses, criminal sanctions for violation of the provisions and the limitations on civil actions contained in section 117.30. The sanctions contained in 117.30 are as severe as the legislature chose to make them. The efficacy of the act will not suffer because we refuse to go beyond those statutes in the guise of judicial interpretation.

"Rule 344(f)13 In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said." Code, 1962.

For the reasons set forth herein the case must be reversed with instructions to enter judgment on the verdict minus the remittitur filed by plaintiff.—Reversed and remanded.

All JUSTICES concur except SNELL, J., who concurs in the result, and LARSON, J., who dissents.