HISEROTE HOMES, INC., Appellee,

v.

Karen K. RIEDEMANN and Iowa Department of Job Service, Appellants.

No. 62267.

Supreme Court of Iowa.

April 25, 1979.

Walter F. Maley and Blair H. Dewey, Des Moines, Iowa Department of Job Service, for appellants.

P. L. Nymann, of Jacobs, Gaul, Nymann & Green, Sioux City, for appellee.

Considered by LeGRAND, P. J., and UH-LENHOPP, HARRIS, McCORMICK and ALLBEE, JJ.

ALLBEE, Justice.

The events which have culminated in this appeal began on January 18, 1977, when claimant, Karen K. Riedemann, was terminated by her employer, Hiserote Homes, Inc. She applied to the Iowa Department of Job Service for unemployment compensation and her union filed an unfair labor practice charge with the National Labor Relations Board.

Hiserote protested payment of benefits to the claimant, alleging that she was discharged for misconduct. The representative of the Job Service Director made an initial determination on March 21 that the claim was valid and that no misconduct was shown.

On March 26, Hiserote and claimant's union signed a settlement agreement which disposed of the unfair labor practice charge. By that agreement, which was subject to NLRB approval, Hiserote reinstated Riedemann to her former position and paid her full back wages for the period she was off work. She returned to her job on March 28.

Subsequent to the settlement agreement Hiserote appealed the representative's decision that claimant was entitled to unemployment benefits. The question of whether she was guilty of misconduct was dropped, however. Instead, the employer claimed that Riedemann was ineligible for benefits because she had received a back pay award for the period involved. The argument is based on the definition of total unemployment found in section 96.19(10)(a), The Code 1977: "An individual shall be deemed 'totally unemployed' in any week with respect to which no wages are payable to him or her and during which he or she performs no services." The employer contends that the back pay provided by the settlement agreement was wages within the meaning of this section, that Riedemann was not totally unemployed and that she therefore is not entitled to compensation. The hearing officer disagreed on the basis of 370 I.A.C. § 4.13(2)(c),[1] which defines wages to exclude such back pay, and affirmed the award in a decision rendered on May 2. The Appeal Board unanimously affirmed the hearing officer.

Hiserote then petitioned the district court for judicial review as authorized by sections 96.6(8) and 17A.19, The Code. The court reversed, expressing the opinion that the Job Service rule excluding NLRB back pay awards from wages did not comport with the legislature's intent.

Thus the question presented is whether a payment of full back pay pursuant to an NLRB approved settlement agreement is "wages" within the contemplation of the Iowa Employment Security Law, ch. 96, The Code, so that a claimant who has received such a payment is ineligible to receive unemployment compensation.

■ I. In order to understand the methodology used under the Iowa Administrative Procedure Act to determine whether an administrative rule is within the authority of the agency which promulgated it, examination of several of this court's recent decisions is necessary. It was recognized in *Schmitt v. Iowa Department of Social Services*, 263 N.W.2d 739, 743 (Iowa 1978) that rule making is "agency action" within the meaning of section 17A.2(9), The Code. The propriety of a rule is therefore subject to judicial review under section 17A.19. A rule may be abrogated for violating any of the seven criteria of section 17A.19(8). The

1. 4.13(2) The following items are not considered as wages and are not deductible from job insurance.
    *a.* . . .
    *b.* . . .
    *c.* Retroactive wage awards. A retroactive wage award granted to a claimant by the national labor relations board shall not be treated as wages, nor shall it be used to establish an overpayment to the claimant. The employer or any interested party may elect to reimburse the department for job insurance payments made to the claimant during the period involved. In the case of reimbursement, the charges to the employer's account shall be removed and the amount paid to the claimant shall be restored to the claim.

.    .    .    .    .

case before us, like the cases which we now discuss, involves violations or alleged violations of section 17A.19(8)(b), action in excess of the statutory authority of the agency.

Review of a rule which dealt with the involved agency's specialized area of substantive expertise was demonstrated in *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129 (Iowa 1978). In *Sorg*, the issue was whether the Department of Revenue had accurately defined, by rule, the phrase "parking lot" as it was used in a taxing statute.[2] The court first examined the delegation of rule making authority contained in the statute creating the Department. Then, while recognizing its coexisting duties to give weight to the Department's interpretation of the statutory term and to sit as final arbiter of the meaning of all Iowa statutes, the court embarked upon a search for the intent of the legislature regarding the use of the phrase. When it was determined that the meaning which the challenged rule gave to the statutory phrase "parking lot" did not comport with legislative intent, the rule was abrogated as being an action in excess of the Department's authority, a violation of section 17A.19(8)(b).

■ Finally, we come to *Davenport Community School District v. Iowa Civil Rights Commission*, 277 N.W.2d 907, 910 (Iowa 1979). The court holds, in *Davenport Community School District*, that section 17A.19(8)(b) should be construed to impose a "rational agency" standard on courts reviewing administrative rules. That is, a

rule should be held to be within the agency's power when a rational agency could conclude that the rule is within its delegated authority. The burden is placed upon the party attacking the rule's validity to make a clear and convincing showing that it is ultra vires. This "rational agency" test is the means by which we intend, in rule review cases, to determine what weight should be given to an agency's interpretation of the statute which it administers. It is the standard by which an agency's use of its expert discretion is to be judged. The standard in *Davenport Community School District* thus fits into, and is an elucidation of, one step in the process developed and utilized in *Sorg*.[3]

■ As demonstrated by *Sorg*, and recognized by *Davenport Community School District*, 277 N.W.2d at 910, however, the exercise of the agency's expert discretion is limited by two boundaries: the language of the enabling act, and legislative intent. It is in the light of these developments that we now consider the propriety of the rule before us.

II. The Job Service seeks to justify its rule by what we perceive to be a three-pronged argument. It first maintains that unemployment compensation is intended as support from week to week and that eligibility should not hinge on a future event. Next, it cites three cases which it reads as defining wages in similar employment security statutes to exclude back pay awards. Finally, it argues that Hiserote could have bargained to have the back pay award reduced by the amount of unemployment compensation which claimant received.

---

2. It is in this particular that *Sorg* is different from *Schmitt*. The rule challenged in *Schmitt* involved the agency's interpretation of a duty imposed upon all administrative agencies by section 17A.4: the duty to afford interested persons an opportunity to comment on proposed rule making. The rule contested in *Sorg*, in contrast, dealt directly with a question in the substantive area which the agency had been created to handle.

3. It is here that the difference between *Schmitt* and *Sorg*, suggested in footnote 2, may be important. When an agency promulgates a rule in the area of its substantive expertise, that action may well be entitled to greater deference

than a rule which merely recognizes or carries out a duty imposed on agencies in general. In the latter case, the special expertise which the agency might bring to bear deals only with unique procedural problems. We do not purport to decide the question now, but less weight might be due a statutory interpretation of the second variety. See *West Des Moines Education Association v. PERB*, 266 N.W.2d 118, 124 (Iowa 1978), *quoting* 2 Am.Jur.2d *Administrative Law* § 656 at 519 (1962) ("decision . . . by an administrative agency having special competence to deal with the subject. . . .").

We have often, when construing a statute, found assistance in decisions from other states which have considered similar language. *See, e. g., Young v. City of Des Moines*, 262 N.W.2d 612, 619 (Iowa 1978); *Greenstreet v. Clark*, 239 N.W.2d 143, 145 (Iowa 1976); *Cassady v. Wheeler*, 224 N.W.2d 649, 652 (Iowa 1974). The courts of several other states have confronted the question which this case presents and have held that an NLRB settlement award or a similar back pay award rendered by an arbitrator is wages. *See, e. g., In re Tonra*, 258 App.Div. 835, 15 N.Y.S.2d 755, *affirmed* 283 N.Y. 676, 28 N.E.2d 402 (1940) (arbitrator's award); *In re Talkov*, 33 App.Div.2d 1084, 307 N.Y.S.2d 809 (1970) (NLRB settlement agreement); *In re Skutnik*, 268 App. Div. 357, 51 N.Y.S.2d 711 (1944) (NLRB settlement agreement); *McCoy v. Remington Rand, Inc.*, 262 App.Div. 790, 27 N.Y. S.2d 298 (1941) (NLRB settlement agreement); *Griggs v. Sands*, 526 S.W.2d 441, 448 (Tenn.1975) (arbitrator's award); *Texas Employment Commission v. Busby*, 457 S.W.2d 170 (Tex.Civ.App.1970) (arbitrator's award); *Salerno v. John Oster Manufacturing Co.*, 37 Wis.2d 433, 439, 155 N.W.2d 66, 69 (1967) (dicta; award by state analog to NLRB).

This result is consistent with federal labor law. Back pay awards by the NLRB are intended to be compensatory. *See F. W. Woolworth*, 90 N.L.R.B. 289 (1950). The NLRB does not have the power to make such awards punitive. *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 12, 61 S.Ct. 77, 79, 85 L.Ed. 6, 10 (1940). Therefore, the NLRB back pay award and unemployment compensation are essentially redundant because they both take the place of wages not earned due to the claimant's termination. This has been tacitly recognized by the Supreme Court, which has held that recoupment of unemployment compensation in a situation such as the present does not conflict with federal policy. *Nash v. Florida Industrial Commission*, 389 U.S. 235, 239 n. 4, 88 S.Ct. 362, 366, 19 L.Ed.2d 438, 442–43 (1967); *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 365 n. 1, 71 S.Ct. 337, 340, 95 L.Ed. 337, 342 (1951).

Two of Job Service's cases for a contrary construction are different and unpersuasive. *In re Cohen*, 44 App.Div.2d 286, 354 N.Y.S.2d 490 (1974), involved an arbitrator's decision that the claimant was not discharged for just cause. Back pay was awarded. The court rejected the Industrial Commissioner's attempt to recover unemployment compensation because it noted that "the arbitrator's award was determined by *reducing* her earnings by the amount of unemployment benefits received . . . ." 44 App.Div.2d at 287, 354 N.Y. S.2d at 492. No such reduction was made here.[4]

Job Service's next case, *In re Greenberg*, 284 App.Div. 921, 134 N.Y.S.2d 421 (1954), dealt with an entirely different question: whether a dismissal payment, or liquidated damages for unjust dismissal, was wages. And, of course, the persuasive value of these cases from the intermediate courts of New York is further limited by the decision of the New York Court of Appeals in *In re Tonra*, 283 N.Y. 676, 28 N.E.2d 402 (1940), which held that a back pay award was wages.

Finally, *Waters v. State*, 220 Md. 337, 152 A.2d 811 (1959), does lend support to the Job Service position. The case is more notable, however, for the proposition that under the Maryland statute the state could not recoup the compensation it had paid because the claimant had not misrepresented or failed to disclose a material fact. The Maryland court's definition of the term "wages" to exclude back pay awards seemed to be grounded primarily on the

4. Nor is Job Service's contention that Hiserote should have obtained such a reduction persuasive. The possibility of negotiating such a concession may be entirely illusory. In *Marshall Field & Co. v. NLRB*, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744 (1943) (per curiam), *affirming* 129 F.2d 169 (7th Cir. 1942), it was determined that the NLRB was not required to reduce its back pay awards by the amount of unemployment compensation received. Our attention has not been drawn to any case involving NLRB awards in which such a reduction was accomplished.

fact that in the absence of a statutory recoupment device the only method for avoiding double payment would be to delay any compensation award. The court recognized that the purpose of unemployment compensation, to provide immediately the funds required for subsistence, would be defeated by such a delay, and avoided this problem by defining wages narrowly. We are not, however, persuaded by *Waters.* That case failed to recognize that two problems were present rather than one. The first was whether a back pay award is "wages" within the unemployment compensation statute. The second was whether the legislature had provided the mechanics for recovering compensation after it had been paid. *See Galvin v. Iowa Beef Processors, Inc.,* 261 N.W.2d 701 (Iowa 1978). If compensation which has been paid is recoverable after a back pay award, then it has served its purpose without resulting in a windfall double recovery. The difficulty with *Waters* is that it attempted to meet the problem by answering both questions at once.

■ We are persuaded that the intent of the Iowa legislature is illustrated by the cases adopting the majority view. The legislature intended that a back pay award should be "wages" within the meaning of the Iowa Employment Security Law. The rule under consideration, 370 I.A.C. § 4.13(2)(c), is in conflict with that legislative intent. Job Service could not rationally conclude that the rule was within its statutory authority. The rule is thus in violation of section 17A.19(8)(b), and cannot stand.

III. What we have thus far said may not dispose of this case, however. We have not been told whether claimant was actually paid compensation or whether it has been withheld pending this appeal. Job Service has argued the case as though it involves recoupment. But the only indication in the record of any preparation to make weekly payments was the statement required by 370 I.A.C. § 4.7(1)(c) setting out data pertinent to claimant's benefit rights. And the implications of the last sentence of section 96.6(2), The Code,[5] are that claimant would not have received any benefits until after the hearing officer's decision on May 2. But that was five weeks after the NLRB settlement agreement was reached, and two weeks after claimant had actually received the money for the back pay award. The purpose of unemployment compensation having thus been entirely defeated by delay, it is not unreasonable to wonder whether payment was postponed until this appeal was resolved. If so, then obviously no payment can be made now.

■ But if that compensation was paid, recoupment would not be available. *Galvin,* 261 N.W.2d at 703–04; *Waters,* 220 Md. at 351–52, 152 A.2d at 818. The employer's account should not be charged, however. Section 96.6(2) (final sentence), The Code; *Galvin,* 261 N.W.2d at 703 (dicta). This result, of course, might well be altered by the amendment to the Iowa Employment Security Law, enacted in response to *Galvin. See* 1978 Session, 67th G.A., ch. 1059, § 3.[6] Neither party argues for that amendment's application to this case, so we give it no further consideration.

The district court was correct in holding that claimant was not entitled to unemployment benefits.

AFFIRMED.

---

**5.** "If a hearing officer affirms a decision of the representative, or the appeal board affirms a decision of the hearing officer, allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's account shall be charged with benefits so paid."

**6.** *NEW SECTION.* ERROR IN RECEIVING BENEFITS. Whenever a person receives any sum as benefits and the person is subsequently determined to be ineligible and the person acted in good faith and is not otherwise at fault, the benefits may be recovered unless the recovery would be contrary to equity or good conscience. Recovery shall be made either by having the sum deducted from any future benefits payable to the person or by having the person paying [sic] to the department a sum equal to the amount received. The person who is liable to repay the benefits may select the method for repayment.