Donald R. MILHOLIN, d/b/a Milholin
Real Estate, Appellee,

v.

Gerald VORHIES, Appellant.

No. 67005.

Supreme Court of Iowa.

June 16, 1982.

Edwin F. Kelly and Barry D. Farmer of Kelly & Morrissey, Fairfield, for appellant.

Ronald K. Watkins and James W. McGrath of McGrath & McGrath, Keosauqua, for appellee.

McCORMICK, Justice.

We must here decide the validity and effect of a rule of the Iowa Real Estate Commission requiring all real estate listing agreements to be in a writing containing all essential terms. The trial court awarded plaintiff Donald R. Milholin judgment for a $3360 real estate commission pursuant to an alleged oral listing agreement with defendant Gerald Vorhies. In doing so, the court rejected the applicability of the commission rule on the ground of absence of commission authority to alter the common law. We hold that the rule is valid and precluded enforcement of the alleged oral listing. Therefore we reverse the trial court.

The rule requiring listing agreements to be written is 700 I.A.C. § 1.23, which became effective July 1, 1975:

> All listing agreements shall be in writing, properly identifying the property and containing all the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date.

Plaintiff contended and the trial court agreed that the validity of this rule is limited to its use as a basis for licensee discipline. This conclusion was based on the premise that the commission lacked authority to adopt a rule abrogating the efficacy of oral listings. Although the trial court noted that a manual published by the commission contained a statement inconsistent with the rule, no showing was made that plaintiff relied on the misstatement.

This court has previously recognized the enforceability at common law of oral brokerage agreements. *See, e.g., McHugh v. Johnson*, 268 N.W.2d 225, 227 (Iowa 1978). The court has also recognized, however, that a rule within the authority of an agency to adopt has the force of statute. *Davenport Community School District v. Iowa Civil Rights Commission*, 277 N.W.2d 907, 909 (Iowa 1979). Because it is clear that the common law can be changed by statute, *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568 (Iowa 1976), the crucial issue here is not whether the rule would supplant the common law but whether it was within the statutory authority of the agency.

█ Principles governing our review of that question are discussed in *Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911,

913 (Iowa 1979), and *Davenport Community School District*, 277 N.W.2d at 909–10. The rule is presumed to be valid, and the burden is on the person challenging it to demonstrate that a "rational agency" could not conclude the rule was within its delegated authority.

Applying that standard here, we find plaintiff did not carry his burden. Code chapter 117 is a regulatory law and not merely a licensing act for raising revenue. *Pound v. Brown*, 258 Iowa 994, 998, 140 N.W.2d 183, 186 (1966). It establishes the real estate commission and vests it with far-reaching authority to license, regulate and discipline brokers and salespersons. For example, licenses are to be suspended or revoked for practices "harmful or detrimental to the public." § 117.29(3). The commission is charged with investigative and disciplinary responsibilities relating to various kinds of specified misconduct including being unworthy or incompetent to act as a real estate broker or salesperson "in such manner as to safeguard the interests of the public." § 117.34(8). The commission is also granted express authority "to promulgate rules to carry out and administer the provisions of [chapter 117] consistent therewith." § 117.9.

■ The overriding purpose of the statute and its delegation of authority to the commission is to protect the public. *Cf. Red Carpet-Barry & Associates, Inc. v. Apex Associates, Inc.*, 130 Ariz. 302, 635 P.2d 1224, 1226 (1981) ("The purpose of the statutes is to regulate the conduct of real estate activities so the public may be protected.").

■ The rule requiring listings to be written is analogous to a statute of frauds. *See Restatement (Second) of Contracts*, Statutory Note at 285, § 110(5), and Comment b to § 126 (1979). In discussing a rule containing almost identical language, the Vermont Supreme Court said:

Ostensibly, the purpose of this rule is for the protection of the public to establish fair dealings between parties, standardize the procedure and practices in the real estate business and to prevent fraud. Its purpose is similar to that of the statute of frauds, which, . . . "is to prevent a party from being compelled, by oral and perhaps false testimony to be held responsible for a contract he claims he never made."

*Green Mountain Realty, Inc. v. Fish*, 133 Vt. 296, 299, 336 A.2d 187, 189 (1975). The real estate commission could reasonably believe that its rule provides similar protection to the public. *See* Gaudio, *The Iowa Law of Real Estate Brokerage*, 30 Drake L.Rev. 437, 461 (1980–81). The legislature has vested the commission with broad authority to determine what practices are harmful or detrimental and what constitutes unworthiness. *See Miller v. Iowa State Real Estate Commission*, 274 N.W.2d 288 (Iowa 1979). The rule thus implements the commission's statutory duty to safeguard the public and provides guidance for brokers.

The Kansas Supreme Court voided a similar rule in *Marcotte Realty & Auction, Inc. v. Schumacher*, 225 Kan. 193, 589 P.2d 570 (1979). The court characterized the Kansas statute as merely a licensing act, however, and did not apply a rational agency standard. We take a broader view of the commission's responsibility under the Iowa statute and apply the rational agency standard in testing the validity of the rule. The commission is charged with regulating broker conduct to protect the public, and the rule is a rational way for it to do so. We conclude that the rule is within the commission's authority.

The rule's effect is not to invalidate oral listing agreements but to make them unenforceable upon proper objection. *See Red Carpet-Barry & Associates, Inc.*, 635 P.2d at 1226; *Green Mountain*, 336 A.2d at 189–90. In view of defendant's affirmative defense relying on the rule, we hold that the trial court erred in enforcing the alleged oral listing agreement. No alternative basis for recovery has been urged, and therefore we do not consider whether any such basis exists. *See, generally, Restatement (Second) of Agency* § 468 at 399, Comment on Subsection (2) (1958); *Restatement (Second) of Contracts* § 375 at 220, Illustration 3 to

Comment a (1979); Annot., 41 A.L.R.2d 905 (1955).

REVERSED.

All Justices concur except UHLEN-HOPP, McGIVERIN, LeGRAND and LAR-SON, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

I think the commission's rule is invalid because it is beyond the scope of the legislatively delegated rule-making power.

The commission is an agency of the executive branch. In promulgating the rule the commission relied on section 117.9 of the Code:

> The commission is empowered to promulgate rules to carry out and administer the provisions of this chapter consistent therewith. Said commission may carry on a program of education of real estate practices and matters relating thereto.

Under this section a rule must "carry out and administer the provisions of this chapter consistent therewith." I do not find that the chapter deals with listings. It deals primarily with licensing and "de-licensing" of realtors. I will review, as succinctly as possible, the sections of chapter 117.

Section 117.1 prohibits a person without a license from acting as a realtor. Section 117.2 deals with licenses in groups of individuals acting as realtors. Section 117.3 defines a real estate broker, and section 117.4 defines real estate. Section 117.5 defines a salesperson and an apprentice salesperson. Section 117.6 delineates acts which constitute dealing in real estate; it does not mention requirements for listing contracts. Section 117.7 states exceptions to the licensing requirement—such as sales by attorneys. Section 117.8 establishes the state real estate commission and specifies its makeup. Section 117.9 is the quoted rule-making provision. Section 117.11 authorizes the commission to employ a director. Section 117.12 sets the compensation of the commissioners. Section 117.13 deals with a commission seal and records.

Section 117.14 provides that commission fees and expenses shall be paid into and from the state's general fund. Section 117.-15 states the requirements for obtaining a license, including examinations; it does not deal with contracts between realtors and listers. Section 117.16 provides for application forms to obtain licenses. Section 117.-18 authorizes commission rules connected with applications for licenses. Section 117.-19 entitles unsuccessful applicants for licenses to hearings. Section 117.20 covers examinations taken by applicants; it does not pertain to listings of property by owners. Sections 117.21, .22, and .23 deal with nonresident licensees, their places of business, and actions against them. Sections 117.24 and .25 deal with custody and display of licenses, and section 117.26 deals with pocket cards of licensees. Section 117.27 has to do with commission fees for examinations and licenses. Sections 117.28 and .29 deal with expiration, revocation, and suspension of licenses. Section 117.30 makes a license a prerequisite to an action by a realtor seeking compensation for services; *it does not require a listing to be in any particular form and does not deal with the subject of listing.* Sections 117.31 and .32 deal with realtors' places of business and with changes of location of those places. Section 117.33 deals with changes of employment by salespersons and apprentices. Section 117.34 has to do with commission investigation of realtors' wrongful acts, such as misrepresentation or failure to account for moneys in their possession, and gives the commission power to suspend or revoke licenses. Sections 117.35, .36, .37, .38, .39, .40, and .41 deal with hearings on charges against licensees; attendance fees and mileage of witnesses; right to witnesses; disobedience of subpoenas; depositions; and findings of fact. Section 117.-42 requires the commission to maintain a list of licensees. Section 117.43 makes disobedience of any of the foregoing provisions a misdemeanor. Section 117.44 authorizes actions to enforce those provisions. Section 117.45 prohibits a realtor from using two or more written or oral contracts for the sale of a parcel of realty in order to obtain a

larger loan; the section does not deal with the listing agreement. Section 117.46 deals with realtors' trust accounts. Sections 117.-50, .51, and .52 deal with commission meetings, public members, and confidential information. Finally, section 117.53 contains a licensee grandfather clause.

The subject of the form or contents of contracts between realtors and listers does not come within the scope of the chapter. We are already inundated by a proliferation of agency rules. I do not think we should enlarge agencies' rule-making powers additionally by construing statutes beyond what appears to be legislative intent in those statutes. If listing contracts ought to be in writing, the General Assembly can so provide as it has done with certain other contracts in the statute of frauds; or it can, with the inclusion of standards or safeguards, authorize the commission to deal by rule with the subject of the form or content of listing contracts. In my judgment the General Assembly has done neither of these things in chapter 117, and a rational agency could not conclude that the rule in question is within its statutory authority. *Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911, 913 (Iowa 1979).

I believe that the rule in question does not come within the scope of the commission's authority. I would therefore uphold the judgment of the district court.

LeGRAND, McGIVERIN and LARSON, JJ., join in this dissent.

McGIVERIN, Justice (dissenting).

I respectfully dissent from the result reached by the majority. I do so on two grounds.

I. First, I join the dissent of Justice Uhlenhopp for the reasons stated therein.

II. Second, even if the Iowa Real Estate Commission rule in question is held valid for the reasons stated in the majority opinion, I additionally dissent from the result for the following reasons.

Some sellers of realty refuse to, or do not, sign a listing contract with a broker yet promise to pay a reasonable commission to the broker if he is the procuring cause of a sale of the premises. That is what happened here. The trial court in this court-tried law action found that defendant seller orally listed his building with plaintiff and that plaintiff broker obtained "a ready, willing, and able buyer who substantially met [defendant seller's] terms."

After the sale defendant refused to pay a commission, and plaintiff commenced this action for the alleged orally-agreed rate of commission. He was met by defendant's contention that a rule of the Iowa Real Estate Commission, 700 I.A.C. § 1.23, which states in part, "[a]ll listing agreements shall be in writing . . . .," was in substance a statute of frauds and that upon proper objection the rule precluded evidence of the alleged oral listing agreement.

I agree the charge of the real estate commission is to protect the public. However, I do not believe the commission's intent could be to preclude a broker from a commission when he had done the work of procuring a buyer in reliance on the oral agreement, which the seller then disowned. As the court in *Frash v. Eisenhower*, 376 N.E.2d 1201, 1204 (Ind.App.1978), said in regard to its version of 700 I.A.C. § 1.23, "a seller of real estate cannot use the statute to effect a fraud on the realtor."

The interpretation utilized and result reached by the majority would not treat brokers equally with other classes of litigants appearing in court seeking a fee for services rendered. Brokers would be singled-out for one-sided treatment and a special statute of frauds when they performed the services but the seller, for one reason or another, failed to *sign* a written listing agreement.

The result reached by the majority (reversal of the judgment for the broker and the end of his claim) is incompatible with the result reached in *Wunschel Law Firm, P.C., v. Clabaugh*, 291 N.W.2d 331, 337 (Iowa 1980), involving an attorney. I recognize there is authority to the contrary at Annot., 41 A.L.R.2d 905, 906–10 (1955), which is cited by the majority.

There is another view, however, which allows the real estate broker an action based on quantum meruit notwithstanding denial of a cause of action based upon oral contract. *See Flammia v. Mite Corp.*, 401 F.Supp. 1121, 1130–33 (E.D.N.Y.1975) (quantum meruit claim for finder's fee upon acquisition of corporation not barred by New York statute of fraud requiring brokerage commission and finder's fee contracts to be in writing or evidenced by written note or memorandum; series of memoranda indicate plaintiff entitled to relief), *aff'd* 553 F.2d 93 (2d Cir. 1977); *cf. Groves Bros. & Co. v. Schell*, 379 S.W.2d 857, 859–60 (Mo.App.1964) (action in quantum meruit allowed to recover value of services rendered by plaintiff after oral authorization to obtain lessee for defendant's real property); *Center Investments, Inc. v. Penhallurick*, 22 Wash.App. 846, 847–51, 592 P.2d 685, 686–88 (1979) (award of real estate sales commission upheld where defendant and plaintiff had no written commission agreement and option between plaintiff and co-defendant had been terminated before plaintiff procured buyer).

In *Wunschel*, an attorney brought an action for fees based on a contingent fee contract. We held "that a contingent fee contract for the defense of an unliquidated tort damage claim which is based upon a percentage of the difference between the prayer of the petition and the amount awarded is void." 291 N.W.2d at 337. We reversed a trial court judgment for plaintiff attorney. *Id.* However, we went on to say:

> The contract is not invalid because of illegality of the services but merely because on policy grounds we cannot approve the way in which the fee was to be calculated. In this situation, plaintiff performed valuable services for defendant for which it is entitled to be compensated. Therefore our decision is without prejudice to plaintiff's right to obtain a reasonable fee from defendant on a quantum meruit basis.

*Id.*

I believe the same is true here by analogy. The trial court found that plaintiff broker performed valuable services. The services were not illegal. The petition in *Wunschel*, as here, was based on an express contract and not quantum meruit. Therefore, to follow our own precedent in *Wunschel*, our decision should be without prejudice to plaintiff's right to attempt to obtain a reasonable commission fee from defendant on a quantum meruit basis. Plaintiff broker should be treated in court on the same basis as the plaintiff attorney was in *Wunschel*.

Assuming the case should be reversed for the reasons stated by the majority, I would do so without prejudice to plaintiff's right to amend his petition to seek recovery for his services on a quantum meruit basis.

LeGRAND, J., joins this dissent.