**INNK LAND AND CATTLE COMPANY, A Colorado Corporation, Appellant,**

**v.**

**Thomas R. KENKEL; Raylyn Ag., Inc., An Iowa Corporation; Manawa Implement and Service, Inc., An Iowa Corporation; Gail Kenkel; Matthew Kenkel; Jeffrey L. Garrett; Linda Garrett; Mary Pfantz; and Ryan D. Pfantz, Appellees.**

No. 91–1420.

Supreme Court of Iowa.

Dec. 23, 1992.

Rehearing Denied Jan. 22, 1993.

A.W. Tauke of Porter, Tauke & Crowl, Council Bluffs, and Thomas C. McGowan and James J. Niemeier of McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for appellant.

C.R. Hannan of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellees.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

INNK Land and Cattle Company, a Colorado corporation, filed an action in Iowa district court to set aside fraudulent transfers of property previously owned by Raymond and Evelyn Kenkel. All of the defendant-transferees are either closely held cor-

porations controlled by the Kenkels or members of the Kenkels' immediate family.

The district court granted the defendants' summary judgment motion on two grounds: (1) the action was barred by 11 U.S.C. § 546 because it was not brought by the trustee in Raymond and Evelyn's chapter 7 bankruptcy within two years of his appointment; and (2) the action was barred by Iowa Code section 614.1(4) (1987), a five-year statute of limitations in fraudulent transfer cases. We reverse and remand.

We need not discuss the facts at length. For purposes of this summary judgment proceeding, we assume the following facts are true. INNK Land and Cattle Company (INNK Land) was the victim of fraud by the Kenkels who had converted assets of the corporation and transferred them to the defendants. The legal issue is whether the plaintiff now has a remedy.

Based on claims of embezzlement, INNK Land filed an action in Federal District Court in Colorado and obtained a judgment against the Kenkels for approximately $1,000,000. When INNK Land attempted to enforce this judgment in Iowa, the Kenkels immediately filed a voluntary petition for bankruptcy under chapter 7. Through the bankruptcy proceedings, INNK Land became aware that the assets that they had originally believed to be in the hands of the Kenkels had been transferred to these defendants.

The bankruptcy trustee abandoned any claim in the disputed assets, and following the abandonment, INNK Land began this action to set aside the transfers. Those efforts were thwarted, however, when the defendants (to whom we will refer collectively as the Kenkels) raised issues under federal and state statutes of limitations.

## I. *The Federal Statute of Limitations.*

■ Section 548 of 11 U.S.C. provides that

[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor [meets certain conditions].

Section 546 of 11 U.S.C., in turn, provides this with respect to such actions:

(a) An action or proceeding under § [548] of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee ...; and

(2) the time the case is closed or dismissed.

It is unquestioned that in this case the trustee did not pursue the action within the time provided by § 546.

Section 548 provides that a trustee "may" pursue such an action; it does not require him to do so. Furthermore, any right the trustee had to pursue such a cause of action in this case was abandoned by the trustee. The bankruptcy judge anticipated that the action would be pursued in postbankruptcy proceedings, presumably in state court. It ruled that

even assuming without deciding that the Kenkels' various transfers were fraudulent, the fact remains there is no evidence indicating the transfers cannot be undone. The only direct evidence on point was the testimony of [the] bookkeeper for INNK, indicating that she had no knowledge of whether the transfers could be undone in a manner that would protect the rights of creditors of the transferors. Further, it seems reasonable to assume the aggrieved parties [INNK Land] could take action to undo any transfer of stock or real estate that was improper.

The court further stated:

In the case at bar, the prejudice to INNK resulting from the continued separation of the estates [INNK Land had unsuccessfully attempted to consolidate its claims against the transferees with the bankruptcy matter] is that it will need to complete its tracing of [the] transfers and then take appropriate steps to undo any improper transfers. However, INNK has already demonstrated it can trace the transfers. Thus, the prejudice to INNK is not severe.

The Kenkels contend that the remedy for INNK Land in such a case was to bring an action to force the trustee to bring the action against the transferees to set aside the fraudulent transfer. We disagree. In the first place, whether to pursue such a claim is apparently left to the discretion of the trustee. *See* 11 U.S.C. § 548. If the bankruptcy court had refused to force the trustee to bring such an action, under the defendant's theory INNK would have no remedy in bankruptcy court. We do not believe this is a fair reading of §§ 546 and 548. In addition, once the bankruptcy trustee abandoned the claim against these transferees, INNK Land was free to pursue its remedies in state court. *Cf. FDIC v. Davis*, 733 F.2d 1083, 1085 (4th Cir.1984) (right of lien holder to pursue fraudulent transfer after closing of bankruptcy). The cases principally relied on by the Kenkels to support their argument that the trustee had the exclusive right to pursue such transfers are distinguishable. They involved conflicts between the bankruptcy trustee and plaintiffs attempting to set aside the fraudulent transfer. There is no such conflict here; the trustee abandoned any claim to those assets.

## II. *The State Statute of Limitations.*

█ Iowa Code section 614.1(4) provides that actions

founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect [must be commenced], within five years....

Section 614.4 provides for the extension of the time for bringing actions based on fraud:

In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved.

The district court ruled that, because Evelyn Kenkel had transferred some of the embezzled proceeds to the payment of a personal debt more than five years before INNK Land commenced this action, INNK Land's claim was barred by section 614.-1(4). It ruled that, as a matter of law, INNK Land knew of the fraudulent payment by Evelyn Kenkel, and it therefore knew that INNK Land had a claim for fraudulent transfers as to all the assets. The extension of time provided by section 614.4 therefore began to run on Evelyn Kenkel's illegal transfer of funds, which was more than five years before this action was commenced.

We do not agree. The fact that one transfer had been made does not as a matter of law establish that the plaintiff knew the extent of the transfers, and even the access of the plaintiff to such knowledge of the isolated transfer is in some doubt. For summary judgment purposes, there is clearly a fact issue as to when INNK Land "knew" of the fraudulent transfer for purposes of applying section 614.4. We reverse and remand for trial.

REVERSED AND REMANDED.