**HUBBELL COMMERCIAL BROKERS, L.C. d/b/a CB Richard Ellis/Hubbell Commercial, Appellee,**

v.

**FOUNTAIN THREE, a Partnership, and R & R Investors, Ltd., Appellants.**

**No. 01–0943.**

Supreme Court of Iowa.

Oct. 9, 2002.

C. Joseph Holland of Holland & Anderson, LLP, Iowa City, for appellants.

William B. Serangeli of Smith, Schneider, Stiles & Serangeli, P.C., Des Moines, for appellee.

CADY, Justice.

This appeal involves a dispute over a real estate commission for securing a commercial tenant in a retail development. We must decide if the district court correctly determined that the rules regulating listing and brokerage agreements adopted by the Iowa Real Estate Commission did not govern the transaction, and whether the district court properly instructed the jury at trial. On our review of the issues presented, we affirm the judgment entered by the district court.

## I. Background Facts and Proceedings.

Fountain Three is a partnership that owns a large retail development in West Des Moines. The development is called "The Shoppes at Three Fountains." One of the partners of Fountain Three is R & R Investors, Ltd. R & R Investors is also a licensed real estate brokerage in Iowa.

Hubbell Commercial Brokers, L.C., is a real estate brokerage licensed in Iowa. It does business as CB Richard Ellis/Hubbell Commercial. Hubbell employed a broker named William Friedman, Jr.

In September 1997, Golf Galaxy, Inc., a Minnesota corporation that owns and operates a small chain of retail golf stores, contacted Friedman through a real estate broker in Minneapolis. The name of the

broker in Minneapolis was William Rothstein. He was associated with CB Commercial Real Estate Group, Inc. Golf Galaxy contemplated opening a golf store in Des Moines, and wanted Friedman to assist it in locating retail space to lease. Friedman agreed to assist Golf Galaxy and investigate locations for a store. Friedman and Rothstein entered into a written agreement to share any real estate commission generated by any lease, and to work together in the transaction.

As a result of information provided to Golf Galaxy by Friedman, the senior vice president of Golf Galaxy, Greg Maanum, met with Judy Price, the director of marketing for R & R Investors, in early November 1997 to discuss locating a Golf Galaxy store in The Shoppes at Three Fountains real estate development. Following the meeting, Friedman wrote Price to request a commission agreement with R & R Investors making R & R Investors responsible for payment of a commission to Hubbell in the event Golf Galaxy leased space in the Three Fountains development. On November 26, 1997, Price wrote Friedman with the following response:

> Thank you for considering our properties as a possible location for Golf Galaxy (Prospect).
>
> R & R Investors, as agent for the owners, will protect you as the broker for as long as the Prospect recognizes you as their exclusive agent. Although as the Prospect's leasing agent you may owe a fiduciary duty to your client with respect to certain matters, certain duties must run to the owners. Specifically and in consideration for the broker protection described in this letter, you must agree that any information, terms or conditions regarding the proposal or lease negotiations involving the owners will be held in strict confidence between the respective parties. None of the owner's information, terms or conversation [sic] will be disseminated or otherwise passed on other than to your client.
>
> Our commission policy is $4.00 p.s.f. on a Lease for a minimum of 5 years or greater. . . .

Following Price's signature at the bottom of the letter, there was a signature line for Friedman to acknowledge his agreement to the terms of the letter. Friedman signed the letter acknowledging the terms on December 3, 1997.

Numerous lease proposals were then exchanged between Golf Galaxy and Fountain Three. Initially, Golf Galaxy's broker in Minneapolis, Rothstein, was involved in the negotiations, but sometime later Maanum took over negotiations for Golf Galaxy. Price participated in the negotiations for Fountain Three.

The parties eventually agreed on a lease and executed a written detailed agreement. One of the terms of the lease made Fountain Three responsible for any commission.

Fountain Three and R & R Investors refused to pay a real estate commission to Hubbell after the lease was signed. Hubbell then initiated an action seeking payment of the commission. The theories of recovery asserted by Hubbell were based on breach of contract, fraud, negligent misrepresentation, and a third-party beneficiary claim. Hubbell claimed it was a third-party beneficiary of the lease term making Fountain Three responsible for any commission.[1]

Fountain Three and R & R Investors sought summary judgment. They claimed

1. Fountain Three and R & R Investors also brought a cross-claim against Golf Galaxy for misrepresentation and intentional interference with a contract. These claims were dismissed during trial and are not involved in the issues on appeal.

the contract on which recovery was sought was not enforceable because it did not comply with the required terms of brokerage and listing agreements under the Iowa Real Estate Commission rules. It further claimed there was no substantial evidence to support the claims of misrepresentation and fraud.

The district court granted summary judgment for Fountain Three and R & R Investors on the claims of negligent misrepresentation and fraud. However, it determined the commission rules did not apply, and the case was eventually tried to a jury on the breach of contract and third-party beneficiary claims.

At trial, Fountain Three and R & R Investors requested three instructions pertaining to the breach of contract claim. First, they requested an instruction that Hubbell had the burden to prove it was the exclusive agent for Golf Galaxy. Second, they requested an instruction that Hubbell was authorized to act for Golf Galaxy. Finally, they requested an instruction to define the term "exclusive." The district court rejected the requested instructions. It instructed the jury that Hubbell was required to prove the existence and terms of a contract, performance of all the terms, breach of the contract, and damages. The parties stipulated that the amount of the disputed commission was $69,000. The jury returned a verdict against Fountain Three and R & R Investors on both theories of recovery for $69,000.

Fountain Three and R & R Investors appeal. They claim the contract that was the subject of the lawsuit was unenforceable as a matter of law because it failed to comply with the requirements imposed under the commission rules. They further claim the district court erred in failing to give the proposed jury instructions.

## II. Standard of Review.

Our standard of review is for correction of errors at law. Iowa R.App. P. 6.4.

## III. Applicability of Commission Rules.

■ Chapter 543B of the Iowa Code governs the licensing and regulation of real estate brokers and persons associated with a real estate broker as an agent or representative of a broker. *See generally* Iowa Code ch. 543B (1997). It also creates a real estate commission within the professional licensing and regulation division of the Department of Commerce that is empowered to adopt rules to carry out the provisions of the chapter. *Id.* §§ 543B.8, .9. We recognize that rules properly adopted by the commission have the force of a statute. *Milholin v. Vorhies*, 320 N.W.2d 552, 553 (Iowa 1982).

The real estate commission has adopted a variety of rules pursuant to its statutory authority. *See generally* Iowa Admin. Code chs. 193E—1 to 193E—8 (1999).[2] Two of these rules are at the center of the dispute in this case. The first is rule 1.23, which provides:

All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be

---

**2.** The real estate commission recently promulgated new rules pursuant to its authority under Iowa Code chapter 543B. Iowa Admin. Bull. Vol. XXV, No. 5 (9/4/02) p. 397, ARC 1921B. These rules were adopted on August 8, 2002, and become effective October 9, 2002. *Id.* This rulemaking resulted in a renumbering of the rules at issue in this appeal, but did not significantly alter their language or effect. The rulemaking did, however, increase the total number of chapters in the real estate commission rules to twenty. Iowa Admin. Code chs. 193E—1 to 193E—20 (2002). To avoid confusion, we will continue to use the old rule numbers for purposes of this opinion.

sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date. It shall contain no provision requiring a party signing the listing to notify the broker of the listing party's intention to cancel the listing after such definite expiration date. An exclusive agency or exclusive right to sell listing shall clearly indicate that it is such an agreement. A legible copy of every written listing agreement or other written authorization shall be given to the owner of the property by a licensee as soon as reasonably practical after the signature of the owner is obtained.

Iowa Admin. Code r. 193E—1.23 (1994).[3]

■ This rule is analogous to the statute of frauds applicable to contracts. *Milholin*, 320 N.W.2d at 554. It does not invalidate listing agreements that fail to comply with the requirements, but makes them unenforceable upon proper objection. *Id.* The rule essentially means that a broker must normally comply with the requirements of the rule to recover a commission. The rule both protects the public and provides guidance for brokers in their business dealings with the public. *See id.*

■ Fountain Three and R & R Investors claim that the November 26, 1997, letter was a listing agreement under rule 1.23 and was unenforceable as a matter of law because it failed to include a definite expiration date as required by the rule. The district court observed that R & R Investors was a broker who identified itself as an agent in the November 26 letter, and concluded that a commission or broker protection agreement between two brokers was outside the definition of a listing agreement.[4]

The term "listing agreement" is not a defined phrase under chapter 543B or the commission rules. Nevertheless, the language of the rule reveals that listing agreements are between brokers or licensees and property owners who seek to sell or lease their property. Rule 1.23 requires a listing agreement to disclose the "terms and conditions under which the property is to be sold," and further requires the "owner of the property" to be

3. Rule 1.23 has been renumbered as rule 11.1 pursuant to a rulemaking effective October 9, 2002. *Id.* r. 193E—11.1 (2002).

4. This issue was first submitted to the district court by a motion for summary judgment. The district court found R & R Investors was a broker in the transaction for the purposes of summary judgment. At trial, Fountain Three and R & R Investors continued to argue that the November 26 letter was not an enforceable agreement because it failed to include a definite expiration date as required by the commission rule. They requested an instruction that a writing does not constitute a commission agreement unless a definite expiration date is set forth. This request was rejected by the court. The factual question whether R & R Investors was a broker for the partnership was not specifically submitted to the jury. At trial and in post-trial motions, Fountain Three and R & R Investors argued that the term "listing agreement" was broad enough to include agreements between the seller's broker and the buyer's broker. In analyzing the issue whether the November 26 letter was subject to the requirements of rule 1.23, we must consider R & R Investors to be a broker for Fountain Three. Fountain Three and R & R Investors argue on appeal that Hubbell was only dealing with R & R Investors as a property owner throughout the course of the transaction, not a broker, but there was ample evidence submitted at trial, including R & R Investors' written acknowledgement that it was an agent for Fountain Three, to support a contrary conclusion. The resolution of this issue inheres in the verdict and there is substantial evidence to support a finding that R & R Investors acted as a broker for Fountain Three. Thus, the issue we must decide in this appeal is whether the requirements of rule 1.23 are applicable to a commission agreement between a broker for the owner and a broker for the buyer.

given a copy of the agreement it has signed. Iowa Admin. Code r. 193E—1.23. Additionally, other subsections of rule 1.23 reveal the agreement is one between the property owner and a broker or licensee. *See* Iowa Admin. Code r. 193E—1.23(1) (licensee shall not negotiate with owner if owner has an unexpired agreement with another broker); 193E—1.23(2) (prohibits net listing agreements, defined as agreements that specify net sales price to be received by the owner with the excess to the broker); 193E—1.23(3) (prohibits licensee from entering into listing agreement with an owner under certain circumstances). The language of the rule as a whole is consistent with the common definition of a listing agreement as "[a]n agreement between a property owner and an agent, whereby the agent agrees to try to secure a buyer or tenant for a specific property at a certain price and terms in return for a fee or commission." Black's Law Dictionary 943 (7th ed.1999).

We recognize our court of appeals has expanded the scope of rule 1.23 beyond contracts between brokers and sellers to include finder fee contracts. *See Buckingham v. Stille,* 379 N.W.2d 30, 33 (Iowa Ct.App.1985). Yet, this decision was based largely on the similarities between the services of a finders broker and a seller's broker and the purpose of the rule. *Id.* We have recognized that the purpose of rule 1.23 is to protect the public, standardize the practices in the real estate business, and prevent fraud. *Milholin,* 320 N.W.2d at 554. These purposes apply equally to brokers who find sellers for buyers as well as brokers who find buyers for sellers. *Buckingham,* 379 N.W.2d at

33. Yet, the same rationale does not apply to fee agreements between two brokers. The target of the rule is to protect the public by regulating brokers, not to protect brokers from other brokers.

■ The requirements of a listing agreement imposed by rule 1.23 also reveal the rule is inapplicable to fee agreements between two brokers. The rule requires a listing agreement to have a definite expiration date. The primary purpose of such a requirement is to "prevent an owner's land from stagnating on the market" for an indefinite period of time in the hands of a single broker. *Leo Eisenberg & Co. v. Payson* 152 Ariz. 390, 732 P.2d 1128, 1130 (App.1987) (citation omitted). Yet, this requirement serves to protect property owners, and has no similar application to agreements between brokers.

■ We conclude that rule 1.23 does not apply to fee agreements between two brokers. The rule applies only to listing agreements, which excludes fee agreements between two brokers.

■ Fountain Three and R & R Investors also argue that the requirements of a written brokerage agreement under rule 1.42 also apply.[5] However, it is clear that the term "brokerage agreement" in rule 1.42 refers only to contracts between a broker and a client. *See* Iowa Admin. Code r. 193E—1.1 (1997) (" '[b]rokerage agreement' means a contract between a broker and a client which establishes the relationship between the parties as to the

---

**5.** Rule 1.42 provides, in part, "[a]ll brokerage agreements shall be written and cannot be assigned, sold, or otherwise transferred to another broker without the express written consent of all parties to the original agreement, unless the terms of the agreement state otherwise." Iowa Admin. Code r. 193E—1.42 (1997). Rule 1.42 has been renumbered as rule 11.3 pursuant to a rulemaking effective October 9, 2002. Iowa Admin. Code r. 193E—11.3 (2002).

brokerage services to be performed").[6]  A client is a party who has an agency agreement with a broker.  *Id.*  Thus, as with rule 1.23, rule 1.42 does not apply to fee agreements between a broker for a buyer and a broker for a seller.

## IV.  Jury Instructions.

■ A trial court must generally give a requested jury instruction if it states a correct rule of law applicable to the facts and the concept is not otherwise embodied in other instructions.  *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823 (Iowa 2000) (citing *Beyer v. Todd*, 601 N.W.2d 35, 38 (Iowa 1999)); *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 148 (Iowa 1992).  If the concept behind the requested instruction is embodied in other instructions, the district court may properly reject the proposed instruction.  *City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 20 (Iowa 2000).

One of the pivotal issues in the case centered on whether Hubbell was the exclusive agent for Golf Galaxy.  Fountain Three and R & R Investors argued and submitted evidence to show Hubbell was not the exclusive agent.  Under the terms of the November 26, 1997, letter, R & R Investors only promised to protect Hubbell as a broker for as long as Golf Galaxy recognized Hubbell "as their exclusive agent."

■ Fountain Three and R & R Investors requested the district court to instruct the jury that Hubbell had the burden of proving it was Golf Galaxy's agent at the time Golf Galaxy and Fountain Three entered into the lease, and that it had authority to act on behalf of Golf Galaxy at the time.  Fountain Three and R & R

Investors also requested an instruction defining the word "exclusive."  The district court rejected these instructions.

The proposed instructions pertaining to the burden of proving an exclusive agent with authority to act for the principal addressed concepts embodied in the marshalling instruction provided to the jury by the district court.  The jury was instructed in this marshalling instruction that Hubbell was required to prove it satisfied all of the terms and conditions of the contract.  Thus, the marshalling instruction informed the jury that Hubbell was required to prove it was the broker Golf Galaxy recognized as its exclusive agent.  Hubbell was required to show it satisfied all the terms of the contract between the parties.  Accordingly, the district court properly rejected the proposed instructions because the concepts were embodied within the marshalling instruction.  Additionally, the requested instructions contained terms that a jury could find were not terms of the contract.  The contract between the parties did not specify the date of the lease as the time Hubbell must be recognized as the exclusive agent or that it be authorized to act at the time.

■ We also reject the claim that the trial court was required to instruct the jury on the meaning of the word "exclusive."  When a word is commonly understood and is not used in a technical manner peculiar to the law, the court is generally not required to provide the jury with a definition absent a specific request.  *See People v. Estrada*, 11 Cal.4th 568, 46 Cal. Rptr.2d 586, 904 P.2d 1197, 1203 (1995).  Nevertheless, error in refusing to give a particular instruction does not warrant reversal unless the error is prejudicial.  *Weyerhaeuser Co.*, 620 N.W.2d at 824 (ci-

**6.**  Rule 1.1 has been renumbered as rule 2.1 pursuant to a rulemaking effective October 9, 2002.  *Id.* r. 193E—2.1.

tation omitted). In this case, Fountain Three and R & R Investors merely sought to provide a dictionary definition of the word "exclusive." Because the word is one that is commonly understood, no prejudice could have resulted by failing to provide the requested definition.

## V. Conclusion.

We conclude the real estate commission rules do not apply to an agreement between two brokers. The district court did not err in instructing the jury.

**AFFIRMED.**