Larry STEWART d/b/a Larry Stewart
Realty, Appellant,

v.

Jeffrey P. SISSON, Appellee.

No. 04–1323.

Supreme Court of Iowa.

March 24, 2006.

Judith M. O'Donohoe of Elwood, O'Donohoe, Stochl, Braun & Churbuck, Charles City, attorney for appellant.

Joel J. Yunek of Yunek Isaacson, P.L.C., Mason City, attorney for appellee.

CADY, Justice.

In this appeal, we must decide whether an oral agreement between a property owner and a real estate broker for the broker to procure a buyer for the property without listing it constitutes a "listing agreement" within the meaning of a real estate commission rule requiring such agreements to be in writing. We conclude such an agreement is not a "listing agreement" and, therefore, reverse the judgment of the district court and remand for further proceedings.

## I. Background Facts and Proceedings

Jeffrey Sisson owned a sports bar and restaurant in Charles City. In early 1999, he contacted Larry Stewart about selling the restaurant. Stewart is a licensed real estate broker in Charles City. According to the facts accepted for the purpose of summary adjudication, Sisson told Stewart he wanted a sales price around $615,000, and he would pay him ten percent of the sales price if he found a buyer. However, Sisson did not want Stewart to list the property because he thought he would lose sales and value from the business if the public were aware it was for sale. Stewart agreed to find a buyer, but the parties never reduced the agreement to writing.

Stewart began looking for a buyer for the property. One person he contacted was Michael Walter, who Stewart thought would be interested in the business. Stewart obtained financial information about the business from Sisson and told Sisson he intended to disclose it to Walter. Stewart required Walter to sign an agreement to keep the information confidential and to prevent him from negotiating directly with Sisson.

On November 13, 2001, Sisson sold the business to Walter without notifying or involving Stewart. Stewart subsequently learned about the sale and wrote Sisson to inquire about his commission. Sisson replied and asked Stewart for written documentation to verify the agreement. Stewart could not provide a writing, and further efforts to resolve the dispute failed.

Stewart filed an action against Sisson for breach of contract in March 2002. Sisson responded by filing a motion to dismiss. He claimed Iowa Administrative Code rule 193E—1.23 [now rule 193E—11.1] barred Stewart's claim. *See* Iowa Admin. Code r. 193E—1.23 (1997) ("All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date."). Stewart resisted the motion and filed an amended petition, adding claims of fraudulent misrepresentation, reckless misrepresentation, breach of implied contract, and unjust enrichment. The district court dismissed the breach-of-contract claim in the original petition, as well as the additional claims in the amended petition.

Stewart appealed. We transferred the case to the court of appeals. The court of

appeals reversed the district court and remanded the case for further proceedings. Without explanation, the court of appeals concluded "the district court was in error to grant defendant's motion to dismiss plaintiff's claims."

After remand, Sisson filed an answer to Stewart's amended petition and denied most of the allegations. Sisson then filed a motion for summary judgment. He again claimed rule 193E—1.23 barred Stewart's claims.[1] Stewart resisted the motion. He claimed his agreement with Sisson was not subject to the writing requirement of the rule because it was not a "listing agreement," and in any event, the rule was invalid and unconstitutional.

The district court granted summary judgment in favor of Sisson. It held that the oral agreement between Stewart and Sisson was subject to the writing requirement of the rule. In addition, the court held the rule was not unconstitutional. Finally, the court concluded Stewart was not permitted to recover under any theory because the purpose of the rule would be defeated. Stewart appealed.

## II. Standard of Review

■ We review rulings granting summary judgment for correction of errors at law. *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (citing *In re Estate of Graham*, 690 N.W.2d 66, 69–70 (Iowa 2004)).

A motion for summary judgment should only be granted if, viewing the evidence in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Iowa R. Civ. P. 1.981(3); citing *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004)).

## III. Discussion

The premise for the district court's decision was that the agreement between Stewart and Sisson was a "listing agreement" under rule 193E—1.23. We have previously held that this administrative rule makes oral listing agreements unenforceable upon proper objection. *Hubbell Commercial Brokers, L.C. v. Fountain Three*, 652 N.W.2d 151, 156 (Iowa 2002) (citing *Milholin v. Vorhies*, 320 N.W.2d 552, 554 (Iowa 1982)). The district court considered the motion for summary judg-

---

1. Sisson acknowledged in his motion for summary judgment that he had contacts with Stewart concerning the sale of the business and presumed for purposes of summary judgment that he and Stewart had an agreement as alleged by Stewart. However, Stewart does not argue on appeal that the agreement is removed from the coverage of rule 193E—1.23, as a judicial admission of the existence of an oral contract, which can by analogy remove a contract from the statute of frauds. *See Catamount Slate Prods., Inc. v. Sheldon*, 176 Vt. 158, 845 A.2d 324, 328 (2003) ("Under the judicial admission exception, a court can enforce an otherwise unenforceable oral agreement when the party against whom enforcement is sought admits the existence of the agreement." (citing 10 Richard A. Lord, *Williston on Contracts* § 27:10, at 69–70 (4th ed.1999))); *accord* E. Allan Farnsworth, *Contracts* § 6.7, at 396–97 (3d ed.1999) (discussing exception); 73 Am.Jur.2d *Statute of Frauds* § 478, at 166 (2001) ("[A] defendant waives the right to assert the statute of frauds if the defendant's counsel stipulates the facts showing that an agreement has, in fact, been reached."); *cf. Gardner v. Gardner*, 454 N.W.2d 361, 363 (Iowa 1990) (applying exception). Accordingly, we do not need to decide whether there is such an exception to the rule. *See Aluminum Co. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) ("It is a well-established rule of appellate procedure that '[t]he scope of appellate review is defined by the issues raised by the parties' briefs.'" (Citations omitted.)).

ment as an objection and relied upon this authority to dismiss the contract claim, as well as all other companion claims. *See Maynes Real Estate v. McPherron*, 353 N.W.2d 425, 426–27 (Iowa 1984) (holding brokers cannot recover for quantum meruit under properly-objected-to oral listing agreement; reasoning "the legislative intent underlying section 1.23 was to forbid *any* recovery by a broker or sales agent under an oral agreement" (emphasis added)). *But see Restatement (Second) of Torts* § 530 cmt. *c*, at 64–65 (1977) (stating misrepresentation claims are still viable when contract and quasi-contract claims fail due to the lack of a writing); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 109, 764 & n. 7 (5th ed.1984) (opining that rules barring recovery on oral contracts should not also bar tort claim of misrepresentation because "the policy which invalidates the promise is not directed at cases of dishonesty in making it"). Thus, we must decide if the district court properly applied the law. *See Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 876 (Iowa 2001) (stating when we review for correction of errors at law, "we determine whether the district court correctly applied the law" to the undisputed facts).

Rule 193E—1.23, entitled "Listings," is an administrative rule promulgated by the Iowa Real Estate Commission pursuant to its rulemaking authority under Iowa Code section 543B.9 (1999). "[R]ules properly adopted by the commission have the force of a statute." *Hubbell Commercial Brokers, L.C.*, 652 N.W.2d at 155 (citing *Milholin*, 320 N.W.2d at 553). In construing an administrative rule, "[a]s with a statute, we seek to ascertain and give effect to the intent of the drafters" and "construe it liberally 'to promote its objects and assist the parties in obtaining justice.'" *Rodgers v. Baughman*, 342

N.W.2d 801, 805 (Iowa 1983) (quoting Iowa Code § 4.2 (1983)).

Rule 193E—1.23 provides:

All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date. It shall contain no provision requiring a party signing the listing to notify the broker of the listing party's intention to cancel the listing after such definite expiration date. An exclusive agency or exclusive right to sell listing shall clearly indicate that it is such an agreement. A legible copy of every written listing agreement or other written authorization shall be given to the owner of the property by a licensee as soon as reasonably practical after the signature of the owner is obtained.

Iowa Admin. Code r. 193E—1.23. Thus, at least with respect to "listing agreements," the rule changes the common law, which recognized the enforceability of oral brokerage agreements. *Maynes Real Estate, Inc.*, 353 N.W.2d at 426 (citing *McHugh v. Johnson*, 268 N.W.2d 225, 227 (Iowa 1978)). We have said that rule 193E—1.23 "is analogous to the statute of frauds applicable to contracts." *Hubbell Commercial Brokers, L.C.*, 652 N.W.2d at 156 (citing *Milholin*, 320 N.W.2d at 554); *see also Rodgers*, 342 N.W.2d at 805 ("[L]ike a statute of frauds the rule is intended to be available as a shield and not a sword." (citing *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 342 (Iowa 1979))). "The rule essentially means that a broker must normally comply with the requirements of the rule to recover a commission. The rule both protects the public and provides guidance for brokers in their business dealings with the public." *Hub-*

*bell Commercial Brokers, L.C.,* 652 N.W.2d at 156 (citing *Milholin,* 320 N.W.2d at 554).

In *Hubbell,* we observed that "[t]he term 'listing agreement' is not a defined phrase under chapter 543B or the commission rules." *Id.* We did not define the term, but concluded that it did not encompass agreements between brokers. *Id.* at 157. We also noted:

> The language of the rule as a whole is consistent with the common definition of a listing agreement as "[a]n agreement between a property owner and an agent, whereby the agent agrees to try to secure a buyer or tenant for a specific property at a certain price and terms in return for a fee or commission."

*Id.* (quoting *Black's Law Dictionary* 943 (7th ed.1999)).

■ The primary, and dispositive, issue presented on appeal is whether an agreement to procure a buyer without listing the property is a listing agreement under rule 193E—1.23. The structure of the rule itself reveals that it is not. The definitional provision of the real estate commission's rules provides different definitions for "listing broker" and "selling broker." *Compare* Iowa Admin. Code r. 193E—1.1 (" '*Listing broker*' means the real estate broker who obtains a listing of real estate or of an interest in a residential cooperative housing corporation."), *with id.* (" '*Selling broker*' means a real estate broker who finds and obtains a buyer in a transaction."). In addition, while rule 193E—1.23 applies to "listing agreements," a different rule—rule 193E—1.42–applies to "brokerage agreements." Rule 193E—1.42 similarly provides that "[a]ll brokerage agreements shall be written." *Id.* r. 193E—1.42 (1997). Rule 193E—1.1 defines "brokerage agreement" as "a contract between a broker and a client which establishes the relationship between the

parties as to the brokerage services to be performed." *Id.* r. 193E—1.1; *accord* Iowa Code § 543B.5(8). The Code defines "brokerage services" as:

1. Sell[ing], exchang[ing], purchas[ing], rent[ing], or leas[ing] real estate.

2. List[ing], offer[ing], attempt[ing], or agree[ing] to list real estate for sale, exchange, purchase, rent, or lease.

3. Advertis[ing] or hold[ing] oneself out as being engaged in the business of selling, exchanging, purchasing, renting, leasing, or managing real estate.

4. Negotiat[ing], or offer[ing], attempt[ing], or agree[ing] to negotiate, the sale, exchange, purchase, rental, or lease of real estate.

5. Buy[ing], sell[ing], offer[ing] to buy or sell, or otherwise deal[ing] in options on real estate or improvements on real estate.

6. Collect[ing], or offer[ing], attempt[ing], or agree[ing] to collect, rent for the use of real estate.

7. Assist[ing] or direct[ing] in the procuring of prospects, intended to result in the sale, exchange, purchase, rental, or leasing of real estate.

8. Assist[ing] or direct[ing] in the negotiation of any transaction intended to result in the sale, exchange, purchase, rental, or leasing of real estate.

9. Prepar[ing] offers to purchase or purchase agreements, listing contracts, agency disclosures, real property residential and agricultural rental agreements, real property commercial rental agreements of one year or less, and groundwater hazard statements, including any modifications, amendments, or addendums to these specific documents.

Iowa Code § 543B.3; *see id.* § 543B.5 (defining "brokerage services" as "those activities listed in sections 543B.3 and

543B.6"); *see also id.* § 543B.6 (incorporating acts set out in section 543B.3).

This scheme is instructive. The distinction made between selling and listing brokers and the broad definition of brokerage services shows that listing property for sale is just one of many brokerage services that a broker can provide to a client. *See id.* § 543B.3(1)-(8). This indicates that a listing agreement is just one type of brokerage agreement between a broker and a client. Clearly, the rules and statutes distinguish between "listing" property and other brokerage services, and we must give this distinction meaning in defining agreements relating to the services. Thus, the statutory and regulatory framework reveals that the term "listing agreements" under rule 193E—1.23 would not encompass agreements between a broker and a client in which the parties agree not to "list" the property. To conclude otherwise would render the listing-agreement rule a virtual nullity because listing agreements would necessarily be covered by the brokerage-agreement rule. *See In re Interest of G.J.A.,* 547 N.W.2d 3, 6 (Iowa 1996) ("The 'statute should not be construed so as to make any part of it superfluous unless no other construction is reasonably possible.' We will presume the legislature enacted each part of the statute for a purpose and intended that each part be given effect. [Furthermore, w]e will not presume that the legislature intended words in the statute be given a redundant meaning." (Citations omitted.)); *Messina v. Iowa Dep't of Job Serv.,* 341 N.W.2d 52, 56 (Iowa 1983) ("Generally, the rules of statutory construction and interpretation also govern the construction and interpretation of rules and regulations of administrative agencies." (Citation omitted.)). Agreements to perform brokerage services other than "listing" the property are "brokerage agreements" under rule 193E—1.42, but are not "listing agreements" under rule 193E—1.23.

The remaining question is what it means to "list" a property. The Minnesota Supreme Court has held that "listing," in the context of Minnesota's real-estate-license statute, means using a compiled and published list of properties and their descriptions "for the purpose of attempting to meet the individual needs of some specifically identified seller, buyer, landlord, or tenant." *State v. Beslanowitch,* 311 Minn. 56, 248 N.W.2d 286, 288 (1976). Other authorities are in agreement. *See Leo Eisenberg & Co. v. Payson,* 152 Ariz. 390, 732 P.2d 1128, 1130 (Ct.App.1987) ("A listing agreement is a form of agency agreement and employment in which the agent agrees to expose a property *to the market* in consideration of payment of his commission if a sale or lease is made." (Citation omitted.)); Jae K. Shim et al., *Dictionary of Real Estate* 168 (1996) (defining "list" as: "To secure a listing by a real estate agent for a certain parcel of property"; defining "listing" as: "Legal contract with a property owner empowering a real estate agent in selling, leasing, or mortgaging the principal's property. A listing has a legal description of the property, is valid for a specified time and gives the details of the sale."). *See generally Grempler v. Multiple Listing Bureau of Harford County, Inc.,* 258 Md. 419, 266 A.2d 1, 3 (1970) ("Multiple listing is a device used by the real estate broker to give wide exposure to properties listed for sale. Each cooperating broker informs all other participating brokers of the properties listed with him, thus an individual home for sale is available to purchasers at several different brokers' offices."). These authorities reveal that real estate would not be "listed" when a broker is not permitted to disclose the sale of the property to the general public, but is only permitted to privately disclose

the sale to those persons the broker considers to be potential buyers.

■ Applying this principle to this case, we conclude rule 193E—1.23 did not apply to the agreement between Stewart and Sisson. An agreement that provides the property is not to be "listed" is not a "listing agreement." A listing "agreement is called a 'listing' agreement because the broker obtains the right to place the seller's property on the broker's list of properties for sale." George Lefcoe, *Real Estate Transactions* 63 (2d ed.1997).

Stewart stated in his affidavit resisting the motion for summary judgment that Sisson did not want to "list" his restaurant because he did not want to detract from his daily business. We must accept this as true for purposes of summary judgment. *INNK Land & Cattle Co. v. Kenkel,* 493 N.W.2d 818, 819 (Iowa 1992). Viewing the facts in the light most favorable to Stewart, we conclude the district court erred in concluding Stewart and Sisson had a listing agreement. Consequently, rule 193E—1.23 was inapplicable to the case, and the district court erred in concluding that it barred Stewart from recovery. Likewise, this same error reveals the district court erred in dismissing the companion claims.

As previously observed, rule 193E—1.42 also requires "brokerage agreements" to be in writing. Thus, it is possible to proceed to determine if the oral agreement in this case is a "brokerage agreement"[2] and, if so, to then decide if the failure to reduce the agreement to writing precludes enforcement of the agreement, as with listing agreements. However, in his motion for summary judgment, Sisson did not raise rule 193E—1.42 as a ground to deny enforcement of the agreement, or argue that the oral agreement, if not a listing agreement, should be denied enforcement as a brokerage agreement. In addition, Sisson did not make any argument in his statement of undisputed facts or memorandum of law that rule 193E—1.42 barred Stewart's claims. Sisson's claim for summary judgment was based solely on rule 193E—1.23. The district court did not rule on the issue, but rather, based it decision to dismiss all of Stewart's claims on the applicability of rule 193E—1.23.

Our limited role as an appellate court acts to constrain our ability to decide issues not presented to the district court. *See Estate of Harris v. Papa John's Pizza,* 679 N.W.2d 673, 679 (Iowa 2004) (reversing summary judgment because the sole ground raised in the motion was erroneous, declining to consider issue not raised in motion, and remanding for further proceedings); *DeVoss v. State,* 648 N.W.2d 56, 61 (Iowa 2002) (holding we can affirm on a ground not relied on by the district court, *but only if the ground was raised* in district court); *Conkling v. Standard Oil Co.,* 138 Iowa 596, 600, 116 N.W. 822, 824 (1908) ("[T]he case must be considered in this court following the line of the theory on which it was tried in the court below; and this we feel constrained to say, although the point is not made by counsel for appellee. In justice to the trial court, if on no other ground, we will not permit a party to mend his hold after coming into this court, and seek to advantage himself on grounds not suggested on the trial be-

---

**2.** In arguing that the oral agreement was not a listing agreement, Stewart acknowledged it was a brokerage agreement. Notwithstanding, he claimed it was not required to be in writing because the current rule covering brokerage agreements, rule 193E—11.3, did not go into effect until September 4, 2002. Stewart is correct that the effective date of the rule was after the date of the oral agreement, but rule 193E—11.3 was not a new rule in 2002; it was just renumbered. Its predecessor, rule 193E—1.42, was in effect in 1999 when Stewart and Sisson made their agreement. *See* Iowa Admin. Code r. 193E—1.42 (1997).

low."); *cf.* *In re Detention of Hodges,* 689 N.W.2d 467, 469 (Iowa 2004) ("The general rule is 'that an appellate court will not consider grounds for a motion for directed verdict which the movant did not place before the trial court.'" (quoting *Podraza v. City of Carter Lake,* 524 N.W.2d 198, 202 (Iowa 1994))). This constraint is based on fairness and provides the essential symmetry and balance to our judicial process.[3] It is not for us to decide substantive issues not raised by the parties, but to decide issues first presented to the district court. *See Pond v. Anderson,* 241 Iowa 1038, 1049, 44 N.W.2d 372, 379 (1950) ("[O]ur duty is merely to pass upon the errors assigned and not to review the evidence de novo nor decide the case as we might think it should be decided.").

## IV. Conclusion

The agreement between Stewart and Sisson was not a "listing agreement." Rule 193E—1.23 did not apply, and the district court erred in dismissing the claims by Stewart on that basis. We reverse the judgment of the district court and remand for further proceedings.

**REVERSED AND REMANDED.**

[3]. The fairness rationale is readily apparent in this case. Stewart alternatively argued that rule 193E—1.23 was unconstitutional. If we proceeded to apply rule 193E—1.42 to resolve the appeal, Stewart would not only be deprived of the opportunity to make arguments specifically directed at rule 193E—1.42 but would be deprived of the opportunity to challenge the application of the rule as unconstitutional. Appellate courts will not address a claim that a statute is unconstitutional when it was not first raised at trial. Fairness dictates that both parties be given an opportunity to reframe their arguments in light of our determination that a listing agreement was not involved in this case.