IN THE SUPREME COURT OF IOWA

 No. 21 / 04-1323

 Filed March 24, 2006

LARRY STEWART d/b/a
LARRY STEWART REALTY,

 Appellant,

vs.

JEFFREY P. SISSON,

 Appellee.

________________________________________________________________________
 Appeal from the Iowa District Court for Floyd County, James M. Drew,
Judge.

 A real estate broker appeals from a summary judgment dismissing all
claims for recovery of a commission from the sale of a business based upon
an oral agreement. REVERSED AND REMANDED.

 Judith M. O’Donohoe of Elwood, O’Donohoe, Stochl, Braun & Churbuck,
Charles City, attorney for appellant.

 Joel J. Yunek of Yunek Isaacson, P.L.C., Mason City, attorney for
appellee.

CADY, Justice.
 In this appeal, we must decide whether an oral agreement between a
property owner and a real estate broker for the broker to procure a buyer
for the property without listing it constitutes a “listing agreement”
within the meaning of a real estate commission rule requiring such
agreements to be in writing. We conclude such an agreement is not a
“listing agreement” and, therefore, reverse the judgment of the district
court and remand for further proceedings.
 I. Background Facts and Proceedings
 Jeffrey Sisson owned a sports bar and restaurant in Charles City. In
early 1999, he contacted Larry Stewart about selling the restaurant.
Stewart is a licensed real estate broker in Charles City. According to the
facts accepted for the purpose of summary adjudication, Sisson told Stewart
he wanted a sales price around $615,000, and he would pay him ten percent
of the sales price if he found a buyer. However, Sisson did not want
Stewart to list the property because he thought he would lose sales and
value from the business if the public were aware it was for sale. Stewart
agreed to find a buyer, but the parties never reduced the agreement to
writing.
 Stewart began looking for a buyer for the property. One person he
contacted was Michael Walter, who Stewart thought would be interested in
the business. Stewart obtained financial information about the business
from Sisson and told Sisson he intended to disclose it to Walter. Stewart
required Walter to sign an agreement to keep the information confidential
and to prevent him from negotiating directly with Sisson.
 On November 13, 2001, Sisson sold the business to Walter without
notifying or involving Stewart. Stewart subsequently learned about the
sale and wrote Sisson to inquire about his commission. Sisson replied and
asked Stewart for written documentation to verify the agreement. Stewart
could not provide a writing, and further efforts to resolve the dispute
failed.
 Stewart filed an action against Sisson for breach of contract in March
2002. Sisson responded by filing a motion to dismiss. He claimed Iowa
Administrative Code rule 193E—1.23 [now rule 193E—11.1] barred Stewart’s
claim. See Iowa Admin. Code r. 193E—1.23 (1997) (“All listing agreements
shall be in writing, properly identifying the property and containing all
of the terms and conditions under which the property is to be sold,
including the price, the commission to be paid, the signatures of all
parties concerned and a definite expiration date.”). Stewart resisted the
motion and filed an amended petition, adding claims of fraudulent
misrepresentation, reckless misrepresentation, breach of implied contract,
and unjust enrichment. The district court dismissed the breach-of-contract
claim in the original petition, as well as the additional claims in the
amended petition.
 Stewart appealed. We transferred the case to the court of appeals.
The court of appeals reversed the district court and remanded the case for
further proceedings. Without explanation, the court of appeals concluded
“the district court was in error to grant defendant’s motion to dismiss
plaintiff’s claims.”
 After remand, Sisson filed an answer to Stewart’s amended petition
and denied most of the allegations. Sisson then filed a motion for summary
judgment. He again claimed rule 193E—1.23 barred Stewart’s claims.[1]
Stewart resisted the motion. He claimed his agreement with Sisson was not
subject to the writing requirement of the rule because it was not a
“listing agreement,” and in any event, the rule was invalid and
unconstitutional.
 The district court granted summary judgment in favor of Sisson. It
held that the oral agreement between Stewart and Sisson was subject to the
writing requirement of the rule. In addition, the court held the rule was
not unconstitutional. Finally, the court concluded Stewart was not
permitted to recover under any theory because the purpose of the rule would
be defeated. Stewart appealed.
 II. Standard of Review
 We review rulings granting summary judgment for correction of errors
at law. Otterberg v. Farm Bureau Mut. Ins. Co., 696 N.W.2d 24, 27 (Iowa
2005) (citing In re Estate of Graham, 690 N.W.2d 66, 69-70 (Iowa 2004)).

 A motion for summary judgment should only be granted if, viewing the
 evidence in the light most favorable to the nonmoving party, “the
 pleadings, depositions, answers to interrogatories, and admissions on
 file, together with the affidavits, if any, show that there is no
 genuine issue as to any material fact and that the moving party is
 entitled to a judgment as a matter of law.”

Id. (quoting Iowa R. Civ. P. 1.981(3); citing Wernimont v. Wernimont, 686
N.W.2d 186, 189 (Iowa 2004)).
 III. Discussion
 The premise for the district court’s decision was that the agreement
between Stewart and Sisson was a “listing agreement” under rule 193E—1.23.
We have previously held that this administrative rule makes oral listing
agreements unenforceable upon proper objection. Hubbell Commercial
Brokers, L.C. v. Fountain Three, 652 N.W.2d 151, 156 (Iowa 2002) (citing
Milholin v. Vorhies, 320 N.W.2d 552, 554 (Iowa 1982)). The district court
considered the motion for summary judgment as an objection and relied upon
this authority to dismiss the contract claim, as well as all other
companion claims. See Maynes Real Estate v. McPherron, 353 N.W.2d 425, 426-
27 (Iowa 1984) (holding brokers cannot recover for quantum meruit under
properly-objected-to oral listing agreement; reasoning “the legislative
intent underlying section 1.23 was to forbid any recovery by a broker or
sales agent under an oral agreement” (emphasis added)). But see
Restatement (Second) of Torts § 530 cmt. c, at 64-65 (1977) (stating
misrepresentation claims are still viable when contract and quasi-contract
claims fail due to the lack of a writing); W. Page Keeton et al., Prosser
and Keeton on the Law of Torts § 109, 764 & n.7 (5th ed. 1984) (opining
that rules barring recovery on oral contracts should not also bar tort
claim of misrepresentation because “the policy which invalidates the
promise is not directed at cases of dishonesty in making it”). Thus, we
must decide if the district court properly applied the law. See Westfield
Ins. Cos. v. Econ. Fire & Cas. Co., 623 N.W.2d 871, 876 (Iowa 2001)
(stating when we review for correction of errors at law, “we determine
whether the district court correctly applied the law” to the undisputed
facts).
 Rule 193E—1.23, entitled “Listings,” is an administrative rule
promulgated by the Iowa Real Estate Commission pursuant to its rulemaking
authority under Iowa Code section 543B.9 (1999). “[R]ules properly adopted
by the commission have the force of a statute.” Hubbell Commercial
Brokers, L.C., 652 N.W.2d at 155 (citing Milholin, 320 N.W.2d at 553). In
construing an administrative rule, “[a]s with a statute, we seek to
ascertain and give effect to the intent of the drafters” and “construe it
liberally ‘to promote its objects and assist the parties in obtaining
justice.’ ” Rodgers v. Baughman, 342 N.W.2d 801, 805 (Iowa 1983) (quoting
Iowa Code § 4.2 (1983)).
 Rule 193E—1.23 provides:

 All listing agreements shall be in writing, properly identifying the
 property and containing all of the terms and conditions under which
 the property is to be sold, including the price, the commission to be
 paid, the signatures of all parties concerned and a definite
 expiration date. It shall contain no provision requiring a party
 signing the listing to notify the broker of the listing party’s
 intention to cancel the listing after such definite expiration date.
 An exclusive agency or exclusive right to sell listing shall clearly
 indicate that it is such an agreement. A legible copy of every
 written listing agreement or other written authorization shall be
 given to the owner of the property by a licensee as soon as reasonably
 practical after the signature of the owner is obtained.

Iowa Admin. Code r. 193E—1.23. Thus, at least with respect to “listing
agreements,” the rule changes the common law, which recognized the
enforceability of oral brokerage agreements. Maynes Real Estate, Inc., 353
N.W.2d at 426 (citing McHugh v. Johnson, 268 N.W.2d 225, 227 (Iowa 1978)).
We have said that rule 193E—1.23 “is analogous to the statute of frauds
applicable to contracts.” Hubbell Commercial Brokers, L.C., 652 N.W.2d at
156 (citing Milholin, 320 N.W.2d at 554); see also Rodgers, 342 N.W.2d at
805 (“[L]ike a statute of frauds the rule is intended to be available as a
shield and not a sword.” (citing Warder & Lee Elevator, Inc. v. Britten,
274 N.W.2d 339, 342 (Iowa 1979))). “The rule essentially means that a
broker must normally comply with the requirements of the rule to recover a
commission. The rule both protects the public and provides guidance for
brokers in their business dealings with the public.” Hubbell Commercial
Brokers, L.C., 652 N.W.2d at 156 (citing Milholin, 320 N.W.2d at 554).
 In Hubbell, we observed that “[t]he term ‘listing agreement’ is not a
defined phrase under chapter 543B or the commission rules.” Id. We did
not define the term, but concluded that it did not encompass agreements
between brokers. Id. at 157. We also noted:

 The language of the rule as a whole is consistent with the common
 definition of a listing agreement as “[a]n agreement between a
 property owner and an agent, whereby the agent agrees to try to secure
 a buyer or tenant for a specific property at a certain price and terms
 in return for a fee or commission.”

Id. (quoting Black’s Law Dictionary 943 (7th ed. 1999)).
 The primary, and dispositive, issue presented on appeal is whether an
agreement to procure a buyer without listing the property is a listing
agreement under rule 193E—1.23. The structure of the rule itself reveals
that it is not. The definitional provision of the real estate commission’s
rules provides different definitions for “listing broker” and “selling
broker.” Compare Iowa Admin. Code r. 193E—1.1 (“‘Listing broker’ means the
real estate broker who obtains a listing of real estate or of an interest
in a residential cooperative housing corporation.”), with id. (“‘Selling
broker’ means a real estate broker who finds and obtains a buyer in a
transaction.”). In addition, while rule 193E—1.23 applies to “listing
agreements,” a different rule—rule 193E—1.42—applies to “brokerage
agreements.” Rule 193E—1.42 similarly provides that “[a]ll brokerage
agreements shall be written.” Id. r. 193E—1.42 (1997). Rule 193E—1.1
defines “brokerage agreement” as “a contract between a broker and a client
which establishes the relationship between the parties as to the brokerage
services to be performed.” Id. r. 193E—1.1; accord Iowa Code § 543B.5(8).
The Code defines “brokerage services” as:

 1.  Sell[ing], exchang[ing], purchas[ing], rent[ing], or
 leas[ing] real estate.

 2.  List[ing], offer[ing], attempt[ing], or agree[ing] to list
 real estate for sale, exchange, purchase, rent, or lease.

 3.  Advertis[ing] or hold[ing] oneself out as being engaged in
 the business of selling, exchanging, purchasing, renting, leasing, or
 managing real estate.

 4.  Negotiat[ing], or offer[ing], attempt[ing], or agree[ing] to
 negotiate, the sale, exchange, purchase, rental, or lease of real
 estate.

 5.  Buy[ing], sell[ing], offer[ing] to buy or sell, or otherwise
 deal[ing] in options on real estate or improvements on real estate.

 6.  Collect[ing], or offer[ing], attempt[ing], or agree[ing] to
 collect, rent for the use of real estate.

 7.  Assist[ing] or direct[ing] in the procuring of prospects,
 intended to result in the sale, exchange, purchase, rental, or leasing
 of real estate.

 8.  Assist[ing] or direct[ing] in the negotiation of any
 transaction intended to result in the sale, exchange, purchase,
 rental, or leasing of real estate.

 9.  Prepar[ing] offers to purchase or purchase agreements,
 listing contracts, agency disclosures, real property residential and
 agricultural rental agreements, real property commercial rental
 agreements of one year or less, and groundwater hazard statements,
 including any modifications, amendments, or addendums to these
 specific documents.

Iowa Code § 543B.3; see id. § 543B.5 (defining “brokerage services” as
“those activities listed in sections 543B.3 and 543B.6”); see also id.
§ 543B.6 (incorporating acts set out in section 543B.3).
 This scheme is instructive. The distinction made between selling and
listing brokers and the broad definition of brokerage services shows that
listing property for sale is just one of many brokerage services that a
broker can provide to a client. See id. § 543B.3(1)-(8). This indicates
that a listing agreement is just one type of brokerage agreement between a
broker and a client. Clearly, the rules and statutes distinguish between
“listing” property and other brokerage services, and we must give this
distinction meaning in defining agreements relating to the services. Thus,
the statutory and regulatory framework reveals that the term “listing
agreements” under rule 193E—1.23 would not encompass agreements between a
broker and a client in which the parties agree not to “list” the property.
To conclude otherwise would render the listing-agreement rule a virtual
nullity because listing agreements would necessarily be covered by the
brokerage-agreement rule. See In re Interest of G.J.A., 547 N.W.2d 3,
6 (Iowa 1996) (“The ‘statute should not be construed so as to make any part
of it superfluous unless no other construction is reasonably possible.’ We
will presume the legislature enacted each part of the statute for a purpose
and intended that each part be given effect. [Furthermore, w]e will not
presume that the legislature intended words in the statute be given a
redundant meaning.” (Citations omitted.)); Messina v. Iowa Dep’t of Job
Serv., 341 N.W.2d 52, 56 (Iowa 1983) (“Generally, the rules of statutory
construction and interpretation also govern the construction and
interpretation of rules and regulations of administrative agencies.”
(Citation omitted.)). Agreements to perform brokerage services other than
“listing” the property are “brokerage agreements” under rule 193E—1.42, but
are not “listing agreements” under rule 193E—1.23.
 The remaining question is what it means to “list” a property. The
Minnesota Supreme Court has held that “listing,” in the context of
Minnesota’s real-estate-license statute, means using a compiled and
published list of properties and their descriptions “for the purpose of
attempting to meet the individual needs of some specifically identified
seller, buyer, landlord, or tenant.” State v. Beslanowitch, 248 N.W.2d
286, 288 (Minn. 1976). Other authorities are in agreement. See Leo
Eisenberg & Co. v. Payson, 732 P.2d 1128, 1130 (Ariz. Ct. App. 1987) (“A
listing agreement is a form of agency agreement and employment in which the
agent agrees to expose a property to the market in consideration of payment
of his commission if a sale or lease is made.” (Citation omitted.)); Jae
K. Shim et al., Dictionary of Real Estate 168 (1996) (defining “list” as:
“To secure a listing by a real estate agent for a certain parcel of
property”; defining “listing” as: “Legal contract with a property owner
empowering a real estate agent in selling, leasing, or mortgaging the
principal’s property. A listing has a legal description of the property,
is valid for a specified time and gives the details of the sale.”). See
generally Grempler v. Multiple Listing Bureau of Harford County, Inc., 266
A.2d 1, 3 (Md. 1970) (“Multiple listing is a device used by the real estate
broker to give wide exposure to properties listed for sale. Each
cooperating broker informs all other participating brokers of the
properties listed with him, thus an individual home for sale is available
to purchasers at several different brokers’ offices.”). These authorities
reveal that real estate would not be “listed” when a broker is not
permitted to disclose the sale of the property to the general public, but
is only permitted to privately disclose the sale to those persons the
broker considers to be potential buyers.
 Applying this principle to this case, we conclude rule 193E—1.23 did
not apply to the agreement between Stewart and Sisson. An agreement that
provides the property is not to be “listed” is not a “listing agreement.”
A listing “agreement is called a ‘listing’ agreement because the broker
obtains the right to place the seller’s property on the broker’s list of
properties for sale.” George Lefcoe, Real Estate Transactions 63 (2d ed.
1997).
 Stewart stated in his affidavit resisting the motion for summary
judgment that Sisson did not want to “list” his restaurant because he did
not want to detract from his daily business. We must accept this as true
for purposes of summary judgment. INNK Land & Cattle Co. v. Kenkel, 493
N.W.2d 818, 819 (Iowa 1992). Viewing the facts in the light most favorable
to Stewart, we conclude the district court erred in concluding Stewart and
Sisson had a listing agreement. Consequently, rule 193E—1.23 was
inapplicable to the case, and the district court erred in concluding that
it barred Stewart from recovery. Likewise, this same error reveals the
district court erred in dismissing the companion claims.
 As previously observed, rule 193E—1.42 also requires “brokerage
agreements” to be in writing. Thus, it is possible to proceed to determine
if the oral agreement in this case is a “brokerage agreement”[2] and, if
so, to then decide if the failure to reduce the agreement to writing
precludes enforcement of the agreement, as with listing agreements.
However, in his motion for summary judgment, Sisson did not raise rule
193E—1.42 as a ground to deny enforcement of the agreement, or argue that
the oral agreement, if not a listing agreement, should be denied
enforcement as a brokerage agreement. In addition, Sisson did not make any
argument in his statement of undisputed facts or memorandum of law that
rule 193E—1.42 barred Stewart’s claims. Sisson’s claim for summary
judgment was based solely on rule 193E—1.23. The district court did not
rule on the issue, but rather, based it decision to dismiss all of
Stewart’s claims on the applicability of rule 193E—1.23.
 Our limited role as an appellate court acts to constrain our ability
to decide issues not presented to the district court. See Estate of Harris
v. Papa John’s Pizza, 679 N.W.2d 673, 679 (Iowa 2004) (reversing summary
judgment because the sole ground raised in the motion was erroneous,
declining to consider issue not raised in motion, and remanding for further
proceedings); DeVoss v. State, 648 N.W.2d 56, 61 (Iowa 2002) (holding we
can affirm on a ground not relied on by the district court, but only if the
ground was raised in district court); Conkling v. Standard Oil Co., 138
Iowa 596, 600, 116 N.W. 822, 824 (1908) (“[T]he case must be considered in
this court following the line of the theory on which it was tried in the
court below; and this we feel constrained to say, although the point is not
made by counsel for appellee. In justice to the trial court, if on no
other ground, we will not permit a party to mend his hold after coming into
this court, and seek to advantage himself on grounds not suggested on the
trial below.”); cf. In re Detention of Hodges, 689 N.W.2d 467, 469 (Iowa
2004) (“The general rule is ‘that an appellate court will not consider
grounds for a motion for directed verdict which the movant did not place
before the trial court.’ ” (quoting Podraza v. City of Carter Lake, 524
N.W.2d 198, 202 (Iowa 1994))). This constraint is based on fairness and
provides the essential symmetry and balance to our judicial process.[3] It
is not for us to decide substantive issues not raised by the parties, but
to decide issues first presented to the district court. See Pond v.
Anderson, 241 Iowa 1038, 1049, 44 N.W.2d 372, 379 (1950) (“[O]ur duty is
merely to pass upon the errors assigned and not to review the evidence de
novo nor decide the case as we might think it should be decided.”).
 IV. Conclusion
 The agreement between Stewart and Sisson was not a “listing
agreement.” Rule 193E—1.23 did not apply, and the district court erred in
dismissing the claims by Stewart on that basis. We reverse the judgment of
the district court and remand for further proceedings.
 REVERSED AND REMANDED.
-----------------------
 [1]Sisson acknowledged in his motion for summary judgment that he had
contacts with Stewart concerning the sale of the business and presumed for
purposes of summary judgment that he and Stewart had an agreement as
alleged by Stewart. However, Stewart does not argue on appeal that the
agreement is removed from the coverage of rule 193E—1.23, as a judicial
admission of the existence of an oral contract, which can by analogy remove
a contract from the statute of frauds. See Catamount Slate Prods., Inc. v.
Sheldon, 845 A.2d 324, 328 (Vt. 2003) (“Under the judicial admission
exception, a court can enforce an otherwise unenforceable oral agreement
when the party against whom enforcement is sought admits the existence of
the agreement.” (citing 10 Richard A. Lord, Williston on Contracts § 27:10,
at 69-70 (4th ed. 1999))); accord E. Allan Farnsworth, Contracts § 6.7, at
396-97 (3d ed. 1999) (discussing exception); 73 Am. Jur. 2d Statute of
Frauds § 478, at 166 (2001) (“[A] defendant waives the right to assert the
statute of frauds if the defendant’s counsel stipulates the facts showing
that an agreement has, in fact, been reached.”); cf. Gardner v. Gardner,
454 N.W.2d 361, 363 (Iowa 1990) (applying exception). Accordingly, we do
not need to decide whether there is such an exception to the rule. See
Aluminum Co. v. Musal, 622 N.W.2d 476, 479 (Iowa 2001) (“It is a well-
established rule of appellate procedure that ‘[t]he scope of appellate
review is defined by the issues raised by the parties’ briefs.’ ”
(Citations omitted.)).

 [2]In arguing that the oral agreement was not a listing agreement,
Stewart acknowledged it was a brokerage agreement. Notwithstanding, he
claimed it was not required to be in writing because the current rule
covering brokerage agreements, rule 193E-11.3, did not go into effect until
September 4, 2002. Stewart is correct that the effective date of the rule
was after the date of the oral agreement, but rule 193E-11.3 was not a new
rule in 2002; it was just renumbered. Its predecessor, rule 193E-1.42, was
in effect in 1999 when Stewart and Sisson made their agreement. See Iowa
Admin. Code r. 193E—1.42 (1997).

 [3]The fairness rationale is readily apparent in this case. Stewart
alternatively argued that rule 193E—1.23 was unconstitutional. If we
proceeded to apply rule 193E—1.42 to resolve the appeal, Stewart would not
only be deprived of the opportunity to make arguments specifically directed
at rule 193E—1.42 but would be deprived of the opportunity to challenge the
application of the rule as unconstitutional. Appellate courts will not
address a claim that a statute is unconstitutional when it was not first
raised at trial. Fairness dictates that both parties be given an
opportunity to reframe their arguments in light of our determination that a
listing agreement was not involved in this case.